Henderson, Chief-Justice.
 

 It is contended in the very able argument for the Defendant, that secondary evidence, such as was received in this case, abito’ admissible in civil, is inadmissible in criminal cases, because its admission impugns the principle of the common law, sanctioned by our bill of rights, that no man shall be compelled to give evidence against himself,
 

 We believe that the whole of the argument is built upon mistaken grounds. Secondary evidence, such as was received in this case, is admitted, not because the adverse party, who is shown to lie in the possession of the primary evidence, refuses to produce it
 
 ¡
 
 but because it is the best evidence in the possession of the prosecutor. It is the same thing to him, as if the primary evidence was actually destroyed. It is placed beyond his control, and it seems to be admitted, that if it. was actually des-
 
 *436
 
 froyed, such evidence is admissible. We cannot per-ceiv- a difference between the two cases: they are both . equally correct; both Founded on the same principle, that js> f|,af t¡„>. ¡ÍIW requires not imoossibilifies, and deems that which
 
 cannot rightfully be
 
 done, and which it would
 
 punish if done,
 
 the same as if it could
 
 not
 
 be done. The principle of the common law, sanctioned by the bill of rights, so far therefore, from operating against the admission of the evidence, operates in its favor. It protects (he Defendant in the possession
 
 of the'primary
 
 evidence ; and thereby places it in the same situation, as to the power which the State has of compelling its production. as if if were actually destroyed. The object of the notice is not
 
 io compel
 
 the party to produce the paper; for no such power is assumed, either directly or indirectly. by placing him under a disadvantage if he does not produce it. its object is, to enable the prisoner to protect himself against the falsity of the secondary evidence, which the law presumes may be false, as its very name imports. The copyist may make a mistake in transcribing ; he may be corrupt; so may the witnesses who give evidence of the contents. It is but reasonable, therefore, that the aroused should have an opportunity of correcting a falsity in the evidence, if one should exist. Notice is given for that purpose, and that alone ; ami whatever may be its form in common practice, it is in substance, a notification that the secondary evidence will be offered. Neither can we perceive, a difference, where the primary evidence is the
 
 corpus
 
 delicti, to use the Counsel’s own phrase, and where it is only evidence. Thus we think the point stands upon principle.
 

 Upon authority it. seems to be well settled, that there is no difference in civil and criminal cases. (1
 
 Starkie
 
 358.) In
 
 Rex
 
 v.
 
 Watson,
 
 (2
 
 T R
 
 199,)
 
 Butter’s
 
 opinion is very clear and explicit.
 
 (McNally
 
 236, 239.
 
 The People
 
 v.
 
 Holbrook,
 
 13
 
 Johns.
 
 90.
 
 United States
 
 v.
 
 Britton,
 
 2
 
 Mason
 
 464, 468.) Nov does the clause in the bin
 
 *437
 
 oi‘ rights detract from the weight of those authorities for that is but in affirmance of the common law. The
 
 dictum of Ld. Eldon,
 
 in the case of
 
 Parkkurst
 
 v.
 
 Lowten,
 
 (2
 
 Swanston
 
 213,)
 
 *
 
 is supposed to be in conflict \v th these authorities, if they should establish the admissibility of the evidence in this case. Every thing which
 
 Ld. Eldon
 
 says deserves consideration — even the droppings of his mind, as he holds communion with himself, iu arriving at his conclusions ; for what then falls from him seems to be of that character, rather than arguments addressed to the understandings of others. If his Lordship' means, that
 
 it yet
 
 remains to he decided in a Court of Law, that such evidence is admissible in a criminal case, where the Defendant lias possession of the deed, or rather that it does not subject him to have the contents proven, as if it were lost, I think very clearly his Lordship is mistaken ; and-I referió the authorities before cited, and many others to be found in the books. But as
 
 Ld. Eldon
 
 must have known of these decisions, [think that he was speaking of a Court of Equity, in which lie-was then sitting ; how he would deeide surh a case there, lie very plainly tells us in the next paragraph. This is
 
 *438
 
 no(; very doubtful, if the passage is read affirmatively, as '*• is P!'iute(^ ®llt ^ i'ead interrogatively, as I think it should be, there, cannot be a doubt. The latter reading may ¡)e (»i¥ectcd by transposing two words,
 
 it
 
 and
 
 is.
 
 It will then read,- “ is it a question
 
 •”
 
 and in confirmation of this reading, the sentence is closed with the mark, of interrogation. Bui be it as it may, his opinion cannot overrule so many, and so great authorities, supported too by reason and good sense.
 

 The next objection is to the
 
 notice
 
 to produce (he pa* pers, as it is called. We think that in substance it is sufficient. No form is required. Any thing will do, coming from a proper source, which apprizes the prisoner, that secondary evidence will be
 
 offered
 
 on the
 
 trial.
 
 Here the. prisoner could not be misled by the notice pointing to the trial to be had in the then
 
 current
 
 term. He was fully apprized thereby, that whenever the trial should take place, either then, or at the next, or any ensuing term, the evidence would be offered.
 

 The next objection is, that the witnesses,
 
 Davis
 
 and
 
 Gill,
 
 were interested, and should have been rejected.
 

 It is admitted, that where property only is at. stake— where that only is the subject of controversy, it is the presumption of law, that interest in the event will, with must men, overcome the love of truth. The law therefore, acting upon that presumption, excludes
 
 all
 
 wiio are so interested, from being
 
 witnesses;
 
 as general rules are formed for majorities. But we are unwilling to acknowledge, that where life is at stake, where the injury inflicted by the perjury is a mur der, the most cold-blooded and deliberate, which can be imagined, that the law makes any such presumption. Although there are beings on whom interest (I mean pecuniary interest) would thus operate, they are rare exceptions to the nature of man, and general rules arc not predicated on exceptions. They are rather monsters than men. But we are glad that we are not left to the necessity of deciding this point:
 
 *439
 
 for we are all clearly of opinion, that the. witnesses were competent when sworn ; the release or assignment having destroyed or transferred their interest, if they had any. For the argument is entirely incomprehensible to ns, how an interest so remote and contingent, so much of a hare possibility, so much of a
 
 nothing,
 
 if I may so express it, that it cannot, by reason thereof, be released or assigned, should disqualify a witness. It is either an interest in property, recognized by law, or it is not. If it is of the former kind, it may be assigned
 
 ;
 
 if of the latter, it docs not disqualify. As to the objection that
 
 Gill's
 
 assignment being voluntary, that is, without consideration, does not bind or pass the property — it hinds
 
 him,
 
 and what effect it may have as to his wife, if she survives him, is immaterial; for it is
 
 his
 
 interest, and not
 
 her’s,
 
 that we are enquiring into. Whether the interest was legal or equitable, is unimportant; for, in either case, the Court which could declare that the interest disqualified, whether it was legal or equitable, was competent to declare that it was annulled or transferred. The case supposed by the Counsel does not arise, of a mere equity being transferred, leaving the legal estate in the witness; as whatever interest the witnesses iiad, whether equitable or legal,
 
 passed;
 
 as the instrument professed to pass the whole of it, and its form is sufficient for that purpose.
 

 As to the declarations of the negro, ! can only repeat what I said in the case of the
 
 State
 
 v.
 
 Scott.
 
 (1
 
 Hawks 2
 
 4.)
 

 The next objection is, that the Court adjourned in the evening over to the next morning (keeping the jury together) without the prisoner’s consent, and contrary to the. declared wishes of his Counsel. This is a mere matter of discretion in the Court, convenient and necessary for the exercise of its proper functions, in which the prisoner’s consent has nothing to do. It deprives him of no right, as in the case of the
 
 Kinlocks (Foster
 
 16) : if it did. his consent would he necessary.
 

 
 *440
 
 The motion, therefore, for a new trial must be overruled.
 

 Various objections are made upon the record, in arrest wf judgment. It is objected, first, that the Court, before which the indictment is taken, is stated in the record to be a Superior Court of Law, and not a Superior Court of Law and Equity, as directed by the act of 1782.
 
 (Rev, e. ITT.)
 
 The Counsel himself has obviated the.objection, by, pointing to the act of ¡787'
 
 (Rev. c,
 
 278,
 
 s.
 
 4) which declares, that such Courts shall, in all law proceedings, be styled the Superior Court of Law, and in all equity proceedings, the Superior Court of Equity. Arid this is a'law proceeding.
 

 It is next objected, that although it appears in the record of the opening of the Court, that the Honorable' White P. Mangum, Judge, was present, thus : “ Present the Honorable White P. Mangum,” yet it does not appear, that the Court was held by him ; that he might be
 
 present
 
 as a mere
 
 spectator.
 
 It requires no in-tendment to understand, that he was present in his official character. The record is made by the direction, and under the superintendence of the Judge, and it is Impossible to conceive why he should
 
 direct
 
 that entry to be made, unless it was to record his official presence. It does not appear^ that any other Judge was present, and we officially know, who are th,c Judges of the Superior Courts, and we know him to be one of them. This objection was taken and overruled in Lewis’
 
 case.
 
 (8
 
 Hawks
 
 410.)
 

 The next objection is, that it nowhere appears upon the record, that the grand jurors were sworn ; although it is slated, that the grand jurors upon their
 
 oath present.
 
 This is'the most serious objection taken to the record. If it were the record of the proceedings of an inferior Court, from authority it seems that it would be fatal. For no presumption is made in favor of the
 
 manner
 
 and
 
 form,
 
 in which such Courts dp their business, or ex
 
 *441
 
 ercise thc-ir jurisdiction. If mast appear apon fiie cord, how, and in what way, they exercised their powers. But it is said, that this rule is confined to the proceedings in inferior Courts, and that the rule as to superior Courts is, that unless the contrary expressly appeal’, it shall be intended lhat they do every thing in the
 
 manner and form
 
 prescribed by law. When it appears, therefore, that they have taken an indictment, it shall he intended, that it was duly taken : that it was taken by the requisite number of good and lawful men, duly drawn, sworn and charged — in other words, that every thing was done correctly, as far as concerns/oral and
 
 manner.
 
 This objection was taken, and seriously urged at the bar in
 
 Lewis’s case.
 
 It was considered by the Court, and overruled, although not noticed in the opinion, in this case, therefore, it must he taken that the grand jury were duly sworn; also that
 
 William Peace,
 
 who is marked as foreman of the grand jury, was duly appointed, ami that “
 
 Win. Peace,”
 
 who signed the bill as foreman, is the same
 
 William Peace
 
 who was so appointed. For the Court receives the indictment with that endorsement, as an indictment, and files it with its records. What is said upon the subject of superior and. inferior Courts, and the distinctions taken are fully supported by the cases cited by the
 
 Attorney-General,
 
 Bub the most prominent, and that referred to by most authors who speak on the subject, is the. case, in
 
 ICeéble’s Rep.
 
 639, and certainly the rule, so far as regards superior Courts,'is warranted by good .sense ; for it is hut a rational presumption, that
 
 Courts of superior jurisdiction conform to the manner of doing business, prescribed by law, until the contrary appears.
 

 As to
 
 the objection, that in the record if is called
 
 autumn term
 
 ; it is true, there is none such known in the law. But where’
 
 “
 
 autumn term” occurs, there was no necessity of naming any term — for the style and caption of the proceedings, the record of the opening of the Court
 
 *442
 
 sli0w, when, where, and before whom, the Court was held, and the taking of the indictment is a proceeding of that term.
 

 jt ¡;g jastly urged, that upon a critical construction of the indictment, it does not more appear, that
 
 Kimbrough
 
 dragged, pulled and choked
 
 Davis,
 
 than that
 
 Davis
 
 dragged, pulled and choked
 
 Kimbrough.
 
 However tins may be upon the first count, I think no such objection as this appears on the second. In that count it'is charged, that
 
 Kimbrough
 
 made an assault upon
 
 Davis,
 
 and that
 
 Kimbrough
 
 placed a rope around
 
 Davis’
 
 neck, and that the said
 
 Kimbrough,
 
 by means of the said rope, the said
 
 John
 
 Davis. did choke and strangle; and that the said
 
 Kimbrough,
 
 with a dagger, which he then in his hand held, the said
 
 John Davis,
 
 in and upon the belly
 
 of the, said John Davis
 
 did thrust and penetrate, giving to him the said
 
 John Davis,
 
 with the said dagger, in and upon the belly of
 
 him the said John Davis,
 
 a mortal wound, of which the said
 
 John Davis
 
 died on the next day; with a conclusion, that
 
 he the said Kimbrough
 
 the said
 
 John Davis
 
 did kill and murder. Human ingenuity cannot make out from this, that it stands indifferent, whether
 
 Kimbrough
 
 or
 
 Davis
 
 was the actor in all and every act necessary to constitute murder; or which was the agent and which the sufferer, not only in the close of the drama, but in each and every act, which led to the catastrophe.
 

 Per Curiam. — Let the judgment of the Court below be affirmed.
 

 *
 

 The following' is an exact copy of the
 
 dictum
 
 referred to, as it is printed in the American edition of
 
 Swanston,
 
 published in 1826 :
 

 “ Though in ordinary cases, to know what has passed, the deeds must be produced, yet if a man declines to produce the deeds, as convicting him of simony, I should be glad to know whether this Court would not receive secondary evidence ? If the deeed is in the hands of a person who objects to the production, as convicting him of a crime, whether against a party so objecting, secondary evidence of the contents may not be produced, as in the case of a lost deed, is a question, so far as I know, yet undecided. It is clear that, in a case in which the Defendant says that he will not disclose the contents of a deed in bis possession, because, if he does, lie shall pnne himself guilty of an offence, the contents of that deed may not b, proved by information ? If a man chooses to place a deed m his possession in the same condition as if it were lost, it is a question, whether the- con, tents of that deed may not be proved in the usual mode by which proof is given of the contents of a lost deed ?”