STATE OF NORTH CAROLINA v. RONNIE EARL ELEY

No. 441A88

(Filed 13 June 1990)

## Judges § 2 (NCI3d) — special superior court judge — commission not received — jurisdiction

A special superior court judge had jurisdiction to preside at a duly authorized special criminal session of the Superior Court of Hertford County at which defendant was convicted where a Gates County venire was requested for this Hertford County criminal trial; a commission was issued by the Chief Justice of the Supreme Court of North Carolina assigning Judge Beaty to preside over the selection of the jury in Gates County; no special session was set for the trial because it was unclear how long it would take to select the jury; the jury voir dire was completed on a Friday, at which point Judge Beaty telephoned the Administrative Assistant of the Chief Justice to inform him that the trial could begin on Monday in Hertford; the Administrative Assistant followed his procedure for assigning an available judge to preside over a special session; the Administrative Assistant's records indicated that the commission was properly issued but the document was not received by the Clerk of Court of Hertford County, the District Attorney, or the Judge; and a commission was later issued *nunc pro tunc* after the technical omission was discovered. Judge Beaty's jurisdiction, power, and authority as a superior court judge flowed from the Constitution of North Carolina and his appointment and commission by the Governor as a superior court judge, and his assignment by the Chief Justice of the Supreme Court to preside at the special session was merely the mode by which Judge Beaty was directed to preside at that session of court. Furthermore, there was ample authority in article IV § 11 of the North Carolina Constitution to enable the Chief Justice to issue the *nunc pro tunc* commission and N.C.G.S. § 7A-46 does not purport to instruct the Chief Justice as to how his order for a special session is to be issued. The commission is merely a manifestation that the session has been ordered and is not essential to the validity of the Chief Justice's order establishing the special session or the proceedings occurring during such session.

**Am Jur 2d, Judges §§ 248, 250, 253-255.**

Chief Justice EXUM did not participate in the deliberation or decision of this appeal.

APPEAL of right pursuant to N.C.G.S. § 7A-27(a) from judgment imposing sentence of life imprisonment entered by *Beaty, J.,* at the 6 June 1988 Special Criminal Session of Superior Court, HERTFORD County, upon a jury verdict of guilty of murder in the first degree. Defendant's motion to bypass the Court of Appeals as to additional judgments for armed robbery and conspiracy allowed by the Supreme Court 29 March 1988. Heard in the Supreme Court 14 March 1990.

*Lacy H. Thornburg, Attorney General, by Dennis P. Myers, Assistant Attorney General, for the state.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for defendant-appellant.*

MARTIN, Justice.

Defendant, who was charged with murder in the first degree, robbery with a dangerous weapon, and conspiracy, was convicted by a jury on all charges at the 6 June 1988 Special Criminal Session of the Superior Court of Hertford County, the Honorable James A. Beaty, Jr. presiding. Following defendant's convictions, Judge Beaty entered judgment and sentenced defendant to life in prison for the murder. The armed robbery and conspiracy charges were consolidated for judgment with a sentence of forty years imposed for those convictions. On appeal, defendant does not challenge the lawfulness of his arrest, arraignment, or the procedural conduct of the trial itself. Defendant's sole argument on this appeal is that Judge Beaty was without jurisdiction to conduct the trial at the Special Criminal Session of Superior Court in Hertford County because he had not been assigned by the Chief Justice of the Supreme Court of North Carolina to preside over that session of court. Therefore, defendant asserts that his trial should be declared null and void. Upon a careful examination of the record, we disagree with defendant's contentions and hold that Judge Beaty had jurisdiction to preside over the special session of court at which defendant was tried.

STATE v. ELEY

[326 N.C. 759 (1990)]

With respect to the issue raised upon this appeal the record in this case shows the following: The Honorable Franklin R. Brown requested a Gates County venire for this Hertford County criminal trial. In a commission issued on 11 April 1988, the Chief Justice of the Supreme Court of North Carolina assigned the Honorable James A. Beaty, Jr. to preside over the selection of the jury at the 30 May 1988 Special Criminal Session of the Superior Court of Gates County. No special session was set for the trial itself because it was unclear at that time how long it would take to select the jury. The jury voir dire was completed on Friday, 3 June 1988, at which point Judge Beaty telephoned Mr. Dallas Cameron, Jr., the Administrative Assistant to the Chief Justice, to inform him that defendant's trial could begin in Hertford County on Monday, 6 June 1988.

As the Administrative Assistant to the Chief Justice, Mr. Cameron had the duty to "[a]ssist the Chief Justice [of the Supreme Court of North Carolina] in performing his duties relating to the assignment of superior court judges" and to "[a]ssist the Supreme Court in preparing calendars of superior court trial sessions." N.C.G.S. § 7A-345(1) (1989) and N.C.G.S. § 7A-345(2) (1989), respectively. Over the years, Mr. Cameron has developed an identifiable procedure for the Chief Justice when ordering a special session of court and assigning an available judge to preside over the special session. According to Mr. Cameron's sworn affidavit, his procedure in the spring of 1988 was as follows:

In the Superior Court Division, when I become aware of the necessity for the assignment of a Superior Court Judge and/or the establishment of a special session of court and receive the approval of the Senior Resident Judge in the District, I determine what judges are available for assignment to that term and note on my schedule the date, location and nature of the session of court, and the Superior Court Judge to be assigned to it. In May and June of 1988 my practice was to place a zero to the left of such a schedule notation, indicating that the commission had not been issued. I then caused the commission to be prepared, indicating the type of session to be held (Criminal, Civil or Mixed), the county, the date the session was to commence, the date of the commission and the Superior Court Judge who was assigned to hold the session. I affixed the signature of the Chief Justice to the document by means of a rubber stamp, and attested the signature

**STATE v. ELEY**

[326 N.C. 759 (1990)]

as Administrative Assistant. I then conveyed the document to my secretary, who copied it and mailed it to the Judge who had been assigned to hold the term of court, the District Attorney, and the Clerk of Court in the appropriate county. After the commission had been prepared, and the Chief Justice's stamped signature affixed thereto, I changed the zero on my schedule document to an asterisk, indicating that the commission had been issued.

In May and June of 1988, it was my practice to take an identical commission document to the Chief Justice for his handwritten signature within a few days of the commission having been issued in the manner set forth above.

The record further shows that while Mr. Cameron was talking with Judge Beaty on 3 June 1988 regarding the establishment of a special criminal session in Hertford County to commence 6 June 1988, he made a notation on his master schedule authorizing issuance of the commission. To the best of Mr. Cameron's recollection, the commission was then prepared and, following his usual procedure, he stamped the Chief Justice's name on the commission, affixed his own signature thereto, and gave the document to his secretary to be copied and mailed. Having completed those steps of the process, Mr. Cameron then placed an asterisk on his master schedule indicating that the commission had been properly issued. The record is less clear regarding what happened to the commission document at that point. What is clear, however, is that the document was not received by the Clerk of Court of Hertford County, the District Attorney, or Judge Beaty. Furthermore, the Administrative Office of the Courts has not been able to locate its copy of the commission document and has concluded that the duplicate which is routinely made from that copy for the Chief Justice's handwritten signature was apparently not prepared.

When this technical omission was brought to Mr. Cameron's attention, a proper *nunc pro tunc* commission was issued on 3 October 1989 to take the place of the missing order. In addition to establishing the special session of court, the commission named the Honorable James A. Beaty, Jr. as the presiding judge.

Turning to the legal issue before us, we hold that Judge Beaty had jurisdiction to preside over defendant's trial in Hertford County. Our holding is supported by *State v. Ledford*, 28 N.C. 5 (1845), a case involving whether it was necessary to set out in a perjury

indictment the commission of the trial judge presiding at the prior trial at which the perjury was committed. In holding that such was not necessary, the great Chief Justice Ruffin wrote for the Court:

> The truth is, however, that such designation or appointment is not in the nature of a special commission or authority to hold a court created by the act; but the powers of the judge are derived from his election and commission as a judge of the Superior Courts, and the designation directed by the act serves only to make it the duty of the particular judge to hold the particular term. . . . The provision of the act of 1842, ch. 16, is nothing more than a mode by which the judge is assigned to the duty of holding a particular term of a Superior Court by the Governor . . . . All persons must take notice of the judicial character of the persons who are the judges of the highest courts of original jurisdiction, civil and criminal. *S. v. Kimbrough*, 13 N.C., 431.
>
> . . . .
>
> In reference to the judge's commission, we have already said, upon authority, that his official character is to be judicially noticed. There can be no such absurdity in the law as that the judge who by the general law and a permanent commission holds a Superior Court is to listen to evidence that he is the judge of the Court. The record made by him establishes to those who succeed him that he held the court at the terms at which, according to the purport of the record, he appears to have held them.

*State v. Ledford*, 28 N.C. at 9-10.

Likewise, in *Sparkman v. Daughtry*, 35 N.C. 168 (1851), this Court held:

> Nor was it necessary that the appointment of the judge to hold the court should be spread upon the record. He does not claim his powers, as a judge of the Superior Courts, from the appointment of the Governor, but from his election and commission as a judge of the Superior Courts. The appointment by the Governor is, under the act of 1844, ch. 16, nothing but a mode by which the judge is assigned to hold the special term of the court. We are bound, then, to presume, *prima*

STATE v. ELEY

[326 N.C. 759 (1990)]

*facie*, that the special term of Gates Superior Court was regularly ordered and duly held, until the contrary appears.

*Sparkman v. Daughtry*, 35 N.C. at 170.

We now reaffirm the above holdings of this Court and note that these principles also apply to the constitutional office of special superior court judges.[1] Judge Beaty's jurisdiction, power, and authority as a superior court judge flowed from the Constitution of North Carolina and his appointment and commission by the Governor as a superior court judge. N.C. Const. art. IV, § 9.

His assignment by the Chief Justice of this Court, pursuant to article IV, § 11 of the Constitution of North Carolina, to preside at the 6 June 1988 special session of Superior Court of Hertford County was merely the mode by which he was directed to preside at that session of court.[2] The issuance of a commission by the Chief Justice assigning a superior court judge to preside over a session of superior court does not endow the judge with jurisdiction, power, or authority to act as a superior court judge. The commission so issued merely manifests that such judge has been duly assigned pursuant to our Constitution to preside over such session of court.

Further, we find ample authority in article IV, § 11 of our Constitution to enable the Chief Justice to issue the *nunc pro tunc* commission on 3 October 1989 to memorialize the assignment of Judge Beaty to preside over the 6 June 1988 session of Superior Court of Hertford County. This section only directs that the Chief Justice make such assignments, the method of so doing is left to the Chief Justice and the Supreme Court. The Administrative Assistant to the Chief Justice has been delegated the responsibility of assisting the Chief Justice in the making of such assignments. N.C.G.S. § 7A-345 (1989). This Court may take judicial notice of the official records of the Office of the Chief Justice of the Supreme Court, including those records kept by the Administrative Assistant to the Chief Justice. *See Staton v. Blanton*, 259 N.C. 383,

---

1. Judge Beaty at the time of this trial was a special superior court judge. On 1 January 1989, he became a regular superior court judge.

2. Under the prior law controlling when *State v. Ledford* and *Sparkman v. Daughtry* were decided, superior court judges were assigned by the Governor, rather than by the Chief Justice as is the practice today. N.C. Const. of 1776, § 13.

130 S.E.2d 686 (1963). Our examination of those records for the week of 6 June 1988 discloses, in accord with the practices of the Administrative Assistant to the Chief Justice, that a special session of superior court for the trial of criminal cases in Hertford County was scheduled for that week and that Judge Beaty was assigned by the Chief Justice to preside over that session of court.

A *nunc pro tunc* order may be issued to record an order actually made which through some inadvertence was never entered in the record of the court. *See* 56 Am. Jur. 2d *Motions, Rules, and Order* § 44 (1971). In determining the appropriateness of entering a *nunc pro tunc* order, the court may consider the record itself, other written evidence, and other satisfactory evidence including parol evidence. *Id.* Thus, in considering the constitutional authority of the Chief Justice and the Supreme Court of North Carolina, the records of the office of the Administrative Assistant to the Chief Justice and the record in this appeal, we hold that the issuance of the *nunc pro tunc* commission on 3 October 1989 was unquestionably lawful and in full accord with the Constitution of North Carolina.

Defendant finally argues that the Chief Justice failed to authorize the 6 June 1988 session of court pursuant to N.C.G.S. § 7A-46. Without deciding the intriguing question of whether this statute violates our Constitution, the record as reviewed above clearly supports our holding that the Chief Justice complied with this statute. The statute does not purport to instruct the Chief Justice as to how his order for a special session is to be issued. Defendant erroneously argues that without a paper commission in hand the Chief Justice's order establishing a special session of court is a nullity. Again, the commission is merely a manifestation that the session has been ordered. It is not essential to the validity of the Chief Justice's order establishing the special session or the proceedings occurring during such session. This argument is rejected.

Further, when it appears from the record that a cause was tried at a special session of a superior court, it is presumed prima facie that an order for holding such session was duly made, and that it was duly held. *Sparkman v. Daughtry*, 35 N.C. 168. Such is the case here. Defendant has failed to rebut this presumption.

We hold that Judge Beaty had jurisdiction to preside at the 6 June 1988 duly authorized Special Criminal Session of the Superior Court in Hertford County at which the defendant was convicted.

No error.

Chief Justice EXUM did not participate in the deliberation or decision of this appeal.