CASE 59.—ACTION BY W. E. BRASHER AGAINST THE WEST-
ERN UNION TELEGRAPH COMPANY.—January 28,
1910.

## Western Union Telegraph Co. v. Brasher

Appeal from Muhlenberg Circuit Court.

W. P. SANDIDGE, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Af-
firmed.

1. Telegraphs and Telephones—Operation—Actions for Damages
—Evidence.—Evidence of unsuccessful efforts by a telephone
company to find the addressee of a telegram before it was
sent is inadmissible to prove diligence of the telegraph com-
pany in trying to find him.

2. Telegraphs and Telephones—Operation—Actions for Dam-
ages—Evidence.—A message by a receiving operator who had
not completed his search, which merely informed the sending
operator that the addressee of a telegram could not be found,
was inadmissible to show diligence in trying to find him.

3. Telegraphs and Telephones—Operation—Actions for Dam-
ages.—Evidence held to justify a verdict finding that a tel-
egraph company was negligent in failing to deliver a tele-
gram.

4. Trial—Operation—Actions for Damages—Instructions—Where
there was some evidence that plaintiff could have reached
his mother's bedside before her death if defendant had used
due diligence in delivering a telegram announcing her illness,
it was not error not to limit a recovery for mental anguish
to that caused by his failure to reach her before the funeral.

5. Telegraphs and Telephones—Operation—Action for Damages
—Question for Jury—Reasonableness of Regulations.—Wheth-
er a telegraph company's rule governing the handling of mes-
sages is reasonable is a question for the court.

6. Appeal and Error—Harmless Error—Instructions.—Where
there was evidence that negligence in failing to deliver a
telegram occurred both before and after the hours specified

in a rule, under which messengers· were not required to de-
liver telegrams between 7 p. m. and 7 a. m., an instruction
that defendant had the right to· make and enforce reasonable
regulations governing the handling of messages, though
defective in omitting to advise the jury that the rule was
reasonable, was not prejudicial to defendant.

7. Trial—Instructions—Definition of Terms.—The court having
charged that defendant was only required to use reasonable
diligence in delivering a telegram the failure to define "ordi-
nary care" as used in the instructions was not error.

8. Trial—Instructions—Requests.—It is not error to refuse
instructions offered, though correct, where the jury have
been fully instructed.

A. E. RICHARDSON and BROWDER & BROWDER for appellant.

R. Y. THOMAS, Jr., for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Appellee recovered of appellant in the court below
a verdict and judgment for $500 damages, on account
of its alleged negligent failure to deliver, in a reason-
able time, the following telegram sent appellee, at
Central City, by his brother, through Harry Turner,
from Russellville, Ky.; "January 26, 1908. Russell-
ville, Ky. · To W. Brasher, Central City, Ky. Your
mother is dying. D. Brasher." According to the
averments of the petition, and evidence introduced in
appellee's behalf, the telegram was delivered by the
sender to appellant's Russellville operator about 2
o'clock p. m., Sunday, January 26, 1908, to be imme-
diately transmitted and delivered to appellee at Cen-
tral City, but it was not in fact received by appellee
until a week later, upon his calling at appellant's Cen-
tral City office for it, after being advised by a letter
from his brother that the telegram had been sent him.
The purpose of the telegram, as alleged in the peti-

tion, and shown by the evidence, was to apprise appellee of the fact that his mother was then believed to be dying; that he might reach her bedside before her death, or in any event, get to her residence in time to be present at her burial, neither of which was he able to do, as his mother died between 7 and 8 o'clock p. m., of January 26, 1908, and was buried between 12 and 1 o'clock in the afternoon of the following day, January 27, 1908. It was further alleged in the petition, and appellee's evidence tended to prove, that but for the negligence of appellant's agents in transmitting the telegram, and in the matter of failing to deliver it, he would have gotten to his mother before her death and been able to attend her burial, and that the negligence of appellant in thus preventing him from seeing his mother before her death, and from attending her burial, caused appellee great mental anguish, and suffering, for which he asked $1,999, damages. Appellant's answer traversed the affirmative matter of the petition, except the averment of its receiving, at Russellville and transmitting to Central City, the telegram in question, and as to this the answer alleged that the telegram was received by appellant's Russellville operator at 2:50 o'clock p. m., January 26, 1908, and transmitted at once over its lines to Central City, where it was received by its agent there at 4:23 o'clock p. m., and immediately placed in the hands of a messenger for delivery to appellee, but that after a reasonable effort to find appellee, and failing to do so, the telegram was returned by the messenger to its Central City office, where it remained until 7:30 o'clock a. m., on the following day, and was then given to another messenger for delivery to appellee; that this messenger also made diligent effort to find appellee, but

failed to do so, whereupon he returned the telegram to the Central City office, where it remained until called for by appellee, a week later. Numerous grounds were filed in support of the motion for a new trial made in the court below, but we will notice only such of these as are urged for a reversal of the judgment appealed from.

It is complained by appellant that the circuit court erred in refusing to permit it to prove on the trial that Sargent, assistant messenger of a telephone company at Central City, attempted, without success, before the telegram was sent by Turner, to ascertain, in response to a telephone call from the latter, the residence of appellee, that Turner might by telephone inform him of the condition of his mother. We do not think this ruling of the court was improper. The failure of appellant's agents to find appellee could not have been excused upon the ground that another could not or did not do so; nor would the efforts of Sargent to find appellee show whether appellant's agents were properly diligent in their efforts to do so. In other words, the diligence or negligence of one person can not be shown by the diligence or negligence of another person. Turner was allowed to testify, without objection, that he tried to reach appellee by telephone before sending him the telegram, and failed, and this, if competent at all, brought to the attention of the jury the fact that he was not, and could not be, advised of the condition of his mother by telephone, which was as far as the inquiry should have been carried.

It is also contended by appellant's counsel that the trial court erred in refusing to permit the introduction of a telegram appel-

lant's Central City operator sent to its Rus-
sellville agent, informing him that appellee
had not been, or could not be, found. This message
was sent after the failure of the first effort of appel-
lant's Central City agents to find appellee, indeed, in
less than an hour of the time the original telegram
reached Central City, and before the alleged attempt
to find him the next morning and it did not indicate
what efforts or means had been employed to find him,
or show that they had used ordinary care to do so. The
telegram might have been based upon the mere belief
of the Central City operator that, as appellee was
personally unknown to him, or there was no one pres-
ent of whom his whereabouts could be asked, he
could not be found. When the telegram was sent from
Central City appellant's agents had not completed
their search for appellee, and had not at that time
reasonably discharged their duty either to appellee
or the sender of the original telegram.    In the ab-
sence of proof showing that the telegram sent from
the Central City office was intended for appellee's
brother, sender of the original telegram, or Turner,
both of whom lived five miles from Russellville, or
of any effort to get it to them, it cannot fairly be
claimed that the purpose of the Central City operator
in sending it was to get information as to the where-
abouts of appellee; indeed, the telegram contained no
such request, and obtained no response. Such evi-
dence is closely akin to the self-serving declaration
of one charged with a negligent act, made following
the act, and to excuse or justify it. We are therefore
of opinion that the exclusion of the telegram in ques-
tion was not error.

It is further contended by counsel for appellant
that the verdict was flagrantly against, and not au-

thorized by, the evidence, which, it is claimed, showed that appellant and its agents used all the care and diligence the law required of them in endeavoring to deliver appellee the telegram from his brother, and that had the telegram been delivered appellee as soon as received at Central City, he could not have gotten to his mother before her death, or if delivered to him the morning following, before the arrival at Central City of the first train going to Russellville, he could not have reached his mother's bedside before her burial. On the other hand, it is insisted for appellee that appellant's Russellville agent negligently delayed sending the telegram; that as Central City is but 37 miles from Russellsville, even if the telegram was given the Russellville operator at 2:50 o'clock, as admitted in the answer, it ought to have been received at the Central City office more than an hour earlier than it was received, which would have given the messenger boy that much more time than he had, for trying to find appellee. It is also insisted for appellee that appellant's Central City agents could with ordinary care have found appellee, and delivered him the telegram in time for him to take the passenger train which passed Central City at 5:13 o'clock p. m., and arrived at Russellville at 7 p. m., which would have enabled him to get to his mother before her death, or, in any event, that with such a delivery of the telegram as they might and could have made, he could have taken a passenger train leaving Central City at 8:50 o'clock a. m. the next day, which would have enabled him to reach Russellville at 10:50 a. m., and his mother's residence in time for her burial. As to these several propositions there was a contrariety of evidence. That of appellee showed that he was a miner by occupation, that he had

lived in Central City and been in the employ of the
Central Coal & Iron Company more than three years,
during the whole of which time his residence had
been at the same place, and within 400 or 500 yards
of appellant's telegraph office.  He also proved by
business men of Central City, such as Howey, Carr,
Robertson, Casebier, Kittinger, and Franklin, whose
stores or other places of business were near the tele-
graph office, that they knew appellee and his place
of residence, and that inquiry of any of them by ap-
pellant's messenger would have enabled him to ascer-
tain without difficulty where appellee lived, and how
to find him.  Appellee also proved that the Central
Coal & Iron Company owned a large store situated
near appellant's office, where appellee and others in
its employ received their wages, purchased their
supplies, and were in the habit of congregating when
not at work, and that inquiry at this store would cer-
tainly have enabled the messenger to ascertain appel-
lee's place of residence and of his work.  It is true
that the stores or other places of business of the per-
sons named, except a drug store of one of them, were
not open on the Sunday afternoon and evening the
telegram to appellee was received by appellant's Cen-
tral City office, but they were all open by 7 o'clock
Monday morning and during the time of the alleged
efforts then made by the messenger to find appellee,
and yet he made no inquiry at any of these places. In
proof of its diligence in trying to find appellee appel-
lant introduced Gish, Crane, Boyd and Woodburn, the
last a physician, and all residents of Central City, to
each of whom one or the other of the messengers sent
out with the telegram made inquiry for appellee's res-
idence. But none of them knew where he lived.  This
conflicting evidence all went to and was considered

by the jury, and from it all it was their province to de-' termine the question of appellant's diligence, or want of diligence in the matter of delivering the telegram, and we cannot say that there was not testimony to justify their finding that appellant was negligent.

As to the question whether appellee could have reached his mother's bedside before her death, if the telegram had been delivered before the departure from Central City of the 5:13 o'clock afternoon train Sunday, there is much doubt, but we are unable to say that there was not some and at least a scintilla of evidence conducing to prove that he might have done so. According to the testimony of one witness the mother died between 8 and 9 o'clock Sunday evening. If this was true, appellee could have gotten to her before her death, as the 5:13 train arrived at Russellville at 7 o'clock, and the distance of five miles to the mother's residence might reasonably have been made by 8 o'clock.

On the other hand, if her death occurred about or shortly before 8 o'clock, it is still barely possible that appellee might have gotten there before she died. The fact, however, that another witness, the son who directed the sending of the telegram, indefinitely testified that she died between 7 and 8 o'clock, makes it extremely doubtful that he could have done so. But it is clear from the evidence that if the telegram had been delivered to appellee in time for him to have taken the 8:50 morning train, which arrived at Russellville an hour later, he could have gotten to the mother's residence before the burial.

Appellant's counsel seriously object to some of the instructions given by the trial court, and these objections, after careful consideration, we think untenable. They contend that instruction No. 1 should

have omitted any mention of the right of the jury to find for appellee because of his failure to get to his mother before her death. In other words, that the instruction should have confined the right of recovery, if the jury had found appellant guilty of negligence in failing to deliver the telegram, to such a sum in damages as would have compensated him for mental anguish, if any, resulting from his inability to attend his mother's funeral. We do not think the instruction defective in the particular named; for, as previously indicated in the opinion, there was some evidence upon which to hypothecate that part of the instruction objected to.

We do not understand that instructions 2 and 3 are objected to by counsel, but it is complained of instruction 4 that it stopped short of properly presenting to the jury the right of appellant to adopt and follow the rule, shown in evidence, under which its messengers were not required to deliver at Central City telegrams between the hours of 7 p. m. and 7 a. m. The instruction in question is as follows: "The court instructs the jury that the defendant had the right to make reasonable regulations governing the handling of messages received by it for transmission, and to conduct its business in accordance with such regulations." It must be conceded that it would have been better for the court to have added to this instruction, if given at all, such words as would have enabled the jury to understand that the rule in question was one of the reasonable regulations which the appellant had the right to enforce, as the matter of whether such a rule was reasonable or otherwise, the facts showing the rule being admitted, was one for the court and not the jury to determine. But we are unwilling to hold that the instruction in the form given

was prejudicial to appellant, for, according to the evidence appellant's negligence, if there was any, occurred either before 7 o'clock p. m. or after 7 o'clock a. m. following its reception of the telegram at Central City, or both before and after those hours. Moreover, it is questionable whether the court should have given instruction No. 4 at all, in view of the fact that the rule contended for by appellant was not pleaded in its answer.

It is also insisted for appellant that the trial court erred in failing to give an instruction defining "ordinary care" as used in the instructions. In response to this we can only say that such an instruction would have been proper, but the failure of the court to give it was not error, in view of the fact that instructions 1, 2, and 3 all advised the jury in apt terms that appellant was only required to use reasonable diligence in sending or delivering the telegram.

Several of the instructions offered by appellant might with propriety have been given by the court; but, as those that were given seem to us to have presented all the law necessary for the guidance of the jury in arriving at a verdict, it was not error for the court to refuse those offered by appellant.

It follows from what we have said that there was no error in the refusal of the trial court to give the peremptory instruction asked by appellant; and, as on the whole record we have discovered no error that was prejudicial to the substantial rights of the appellant, the judgment is affirmed.