## Thomas, By His Next Friend, J. A. Thomas v. The Houston, Stanwood & Gamble Co.

(Decided January 10, 1912.)

Appeal from Kenton Circuit Court
(Common Law and Equity Division.)

1. Master and Servant—Contracts Between—Rule Promulgated by Master for Servant—Court Must Decide as to Rule.—In contracts of employment between master and servant, the duty rests upon the court to decide whether a given rule promulgated by the master to the servant for his guidance in the discharge of his duties, is a reasonable, or unreasonable exercise of the master's authority and province.

2. Same—Infraction of Rule by Servant—Discharge of.—Where such a rule was reasonable and was broken by the servant, his discharge by the master was justifiable.

B. F. GRAZIANI for appellant.

S. D. ROUSE and CHARLTON B. THOMPSON for appellee.

OPINION OF THE COURT BY JUDGE WINN—Affirming.

On April 9th, 1907, the appellee company entered into a written contract of employment of appellant, Thomas, whereby the latter was to work in the manufacturing plant of the former for a period of four years from September 24th, 1906, at an annually increasing scale of hourly wages. In the contract it was agreed that the appellee would not discharge Thomas "except for neglect of work, inability to perform work in hand, or for bad conduct."

On June 12th, 1908, the company discharged Thomas; whereupon he brought his action against the company

for an alleged breach of its contract. By an amendment he set up his effort and failure to obtain other work, and by his evidence sustained this part of his case. Upon the principal issue the company answered, admitting the discharge, but justified it by charging that Thomas had for a long time neglected his work, on not less than three occasions had violated its rules and regulations, well-known to him, in force in its factory where he worked, that he was habitually indifferent to his work, and indifferent to and rebellious against those in authority over him—that for these reasons, and none other, he was discharged. Issue was joined upon these allegations and the case proceeded to a trial. The court placed the burden upon the company. Upon the trial it appeared, from the company's witnesses, that Thomas had sometimes been slow in his work, would slow down the machine he was operating against the direction of his superior, and according to one of his immediate overseers was "the contrariest fellow he ever had in the shop." Thomas, upon the other hand, minimizes these instances as casual and of no consequence. He explains that an offensive answer to his superior was joking in spirit and that he meant no rudeness. It appeared further in the evidence that one of the company's rules governing its operations was a regulation that the men should keep their street clothing in a dressing room maintained by it for that purpose, and away from the machinery at which the men were at work. This rule was persistently broken by Thomas, who was familiar with it, and notwithstanding complaint had been made to him because of his infraction of the rule. He says frankly that he knew the rule; that he had been spoken to about disobedience of it; that he told his superiors that he would discontinue the infraction, but that he did not do as he said he would. In persisting in this, his own course of action, against a rule which he knew, of however little consequence his own judgment may have deemed it, he was undoubtedly guilty of bad conduct, one of the specific grounds upon which he had agreed that the company might discharge him. There is no contradiction of the testimony upon this point; and it need, therefore, have no further consideration.

Upon the trial the court, among other things, instructed the jury in substance that they should find for the defendant company if they should find from the evidence that Thomas "wilfully or repeatedly disobeyed

reasonable rules of the defendant adopted by it for the government of the defendant's employes in the performance of the work." To this instruction proper exception was saved by defendant company.

With this instruction and the testimony above outlined in the record, the jury brought in a verdict of five hundred dollars for Thomas. The company entered its motion and filed its grounds for a new trial. Upon consideration a new trial was granted. Upon the second trial the evidence introduced was identical with that upon the first trial. The defendant again had the burden; and at the conclusion of all the testimony, upon motion therefor by the defendant, the court instructed the jury to find a verdict for it. From the final order of dismissal following such verdict this appeal is prosecuted.

As above pointed out, there can be no reasonable question that Thomas violated a rule of the defendant company. In the first trial the instructions left it to the jury to say whether that rule was "reasonable;" and we gather from briefs of counsel that the court granted the new trial because the presiding judge had reached the conclusion that the reasonableness of the rule was for the court to determine, not an issue for determination by a jury. Because of the fact of the infraction of the rule, and its view that that rule was reasonable, the trial court directed the verdict for defendant.

The point here for determination, therefore, is whether in contracts of employment the court or the jury is to decide that a given rule promulgated by the master to the servant, for his guidance in the discharge of his duties, is a reasonable or an unreasonable exercise of the master's authority and province. In our opinion that duty rests upon the court. The several courts of the Union are not in harmony. But in Kentucky the rule has been declared that the question of reasonableness is for the court, though without any elaborate discussion of the principle involved. In the case of Cincinnati, New Orleans and Texas Pacific Railway Company v. Lovell's Adm'r, 141 Ky., 249, it was said: "If a written or printed rule is reasonable and not against public policy, and it is known to the servant or employe, or should be known by him, and the undisputed facts show it was established and in force and that it is applicable to him, and that his violation of it was the proximate cause of the injury he complains of, then the court should

take the case from the jury." This statement carries the necessary deduction that the question of reasonableness is for the court. There is no difference in principle between a rule that it written and one that is not, especially when, as here, the servant's knowledge of the rule is conceded. The case cites as authority for its position, the case of Western Union Telegraph Company vs. Crider, 107 Ky., 600, a case where the telegraph company had put in evidence its rule against night delivery of messages then in force at Elizabethtown. It was remarked that only the declaration of the courts could fix any permanent understanding of the subject; that if it were left to the juries one view would be taken by a jury to-day, and another to-morrow, and that neither party would know his rights or obligations. In the case of Western Union Telegraph Company vs. Brasher, 136 Ky., 485, this court again said that the matter of whether a given rule was reasonable or otherwise, was one for the court, and not the jury, to determine. The same idea is found in Railway Company v. Whittemore, 43 Ill., 420; Jerome v. Queen City Cycle Co., 163 N. Y., 351; Kendall v. West, 196 Ill., 221; Kansas City, Fort Scott and Memphis Ry. Co. v. Hammond, 24 S. W., 723 (from Arkansas); Walker v. Hancock Mutual Life Insurance Co., 68 Atlantic 113 (from New Jersey), and many other cases.

The propriety, the necessity indeed, of the promulgation of such wise and reasonable rules by the master to the servant for his guidance in a large and complicated manufacturing plant like that of appellee cannot be questioned; for without them there would be neither order nor system, nor could the Company's business be expedited save by a compact working entity of its employes under such rules. Upon the other hand, they are just as necessary and desirable to the servant; for in the making of such rules by trained and experienced heads of departments, and in obedience to them by the servant, must in large measure lie the latter's safety of life and limb. It would be impossible for us to outline the different demands of the many fields of employment in which such rules are proper or the specific obligations which should be imposed in the different kinds of service. Each instance must be answered by its facts. But it seems to us that the rule as to clothing in the present case was beyond question reasonable. And while the employer in every case should exercise fair dealing

and kind treatment toward his employe, the latter as well owes to the former to be faithful and diligent in the performance of his services, and to obey his reasonable rules within the nature of his employment. There is no doubt here that the rule was broken; and it follows that the discharge was justifiable.

It is argued that the testimony showed that Thomas' discharge was not because of the infraction of this specific rule, but because of his general conduct; and that his general conduct was for the jury to pass upon. But the specific instance of disobedience or bad conduct entered into and was a part of his general conduct, and was alone sufficient to justify the discharge. About it there was no contrariety of evidence; and the court therefore properly took the case from the jury. Nor is there any merit in the claim that his habitual disregard of the rule warranted him to treat it as waived; for the evidence shows that there was no acquiescence in, but continued complaint at, the breaking of the rule whenever it came under the notice of the master.

The judgment is affirmed.