## Mollie Hodshire, Appellee, v. Corn Products Refining Company, Appellant.

1. MASTER AND SERVANT—*contributory negligence.* Plaintiff was injured in operating a stamping machine through her fingers being caught in the dies, while she was removing some mashed plugs, and charged defects in the machine. She had been instructed not to put her fingers under the dies. *Held,* that her exercise of ordinary care for her own safety not being shown, judgment in her favor would be reversed.

2. MASTER AND SERVANT—*violation of rules.* Where operators of stamping machines are constantly warned from dangerous practices, and the employer honestly endeavors to enforce a rule for their safety, and disobedience to such rule is not necessary for the performance of the work of the employe, the violation of such regulation will not be held to have been acquiesced in by the employer, nor will such rule be treated as inoperative.

Appeal from the City Court of Granite City; the Hon. J. M. BANDY, Judge, presiding. Heard in this court at the October term, 1912. Reversed and remanded. Opinion filed March 10, 1913.

DAN McGLYNN, for appellant.

M. R. SULLIVAN, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

Appellant operates a plant in Granite City, Illinois, in which it manufactures corn products of various kinds. The plant was divided into departments, one of which was devoted to the manufacture of tin cans, in which the corn products were placed for shipment. In this department, there were some thirty-five stamping machines used for making different parts of the cans, which were operated by girls. On February 9, 1912, appellee was employed in operating one of these stamping machines, which was used for making tin plugs for two pound cans. This machine had two stationary dies on the bench in front of the operator, one

of which was somewhat lower and directly back of the other. There were also two upper dies which, as the machine was operated, came down on the lower ones. The front dies cut a plug and as the upper dies raised the plug slipped back on the lower die in the rear. When the upper dies lowered again, they not only cut a plug on the front side, but also curled the edges of the plug on the back one, and as they again raised, a "flipper" working with a spring, cast the finished plug from the back die into a box. The stamping machines were operated by means of a line shaft and pulleys and the operator in charge of the machine sat on a stool in front of it and caused the upper dies to lower and rise by means of a treadle, worked by the foot. The main shaft was continuously in motion but the crank shaft thereon operating the machine did not turn unless the treadle was pressed down, when a clutch pin was released and caught in a groove in the fly wheel and caused the crank shaft to turn for one revolution, after which, if the machine worked properly, the clutch pin would slip back and the crank shaft would again become stationary. During each of these revolutions, the upper dies would go down onto the lower dies and then ascend to their former position where they remained until the operator again pressed the treadle. Sometimes the tin plugs would not slip entirely from the front die to the one back of it, so that when the upper die came down, it would catch and mash it and if several of them became mashed together, the machine was clogged and they were hard to remove. Each operator was therefore furnished with a wire hook to take out the mashed plugs and when they could not be so removed, it was the duty of the operator to call the foreman to remove them. Some, possibly all of the operators, were shown, however, to have been at times in the habit of removing the mashed plugs with their fingers, and to prevent this appellant had the following notice posted in the room: "Any person putting fingers under punches will be

discharged; to remove scraps from under die use a small stick." It appeared that one employe had been discharged for disobeying the notice and that the foreman, when he saw them disregarding this rule, told them they must not put their fingers under the dies. This instruction he gave appellee a number of times.

Shortly after noon on the day in question, appellee was endeavoring to take out three plugs that were mashed together in the back die, using her fingers for that purpose and while she was so engaged, the upper die came down, catching and cutting off the ends of her two index fingers.

Appellee brought suit to recover damages for her injuries which she charged, in the three counts of the declaration, were caused by the defective condition of the machine which she was operating. The defect alleged in the first count was that the apparatus supporting the upper dies was so out of repair that the dies would descend without being caused to do so by the operator. The second was substantially the same as the first, while the third charged in addition that the lower back die and the automatic device connected therewith were so defective that they would not remove the tin plugs, thereby making it necessary for appellee to remove them with her hands. Appellee obtained a verdict and judgment in her favor for $1,566.17.

Appellant asserts that the facts in this case, do not warrant a recovery in favor of appellee and it is to this claim that our review of the case has been mainly directed. Appellee testified that the machine repeated a number of times on the day of the injury and had done so previous thereto; that repeating meant that when she had pressed down on the treadle and the dies had come down in response thereto and returned to their place they would again come down without the treadle being pressed; that in each instance when the machine repeated, she had called the foreman's attention to it and he had fixed it but that she did not know

what he did to correct the defect; that shortly before noon on the day in question, it repeated and she told the foreman who worked on it, and he told her to go ahead; that shortly after noon it again repeated and she was injured as stated. She also stated that she was furnished with a wire to take out the mashed plugs; that she had been told by the foreman not to put her fingers under the dies and that she knew they would be cut off if they were caught. While the operator on each side of her saw the die come down and catch her fingers, there was no testimony but her own that the die repeated. The girl who operated the machine before her and the one taking it afterwards, both testified that it did not repeat with them, and the foreman also stated that he tested it immediately afterwards and it was found to be all right.

The crucial question presented to us for determination, however, is whether or not under all the circumstances appellee was in the exercise of ordinary care for her own safety at the time of the injury. Her counsel insisted that as it was shown to have been a common practice among the operators to remove the mashed plugs with their fingers, the rule against it must be considered as abrogated and not in force as against appellee. But it further appeared from the proofs that the custom of the operators to remove the plugs with the fingers was a dangerous one and that appellee knew it was dangerous; that it was not only forbidden by written instructions posted in the room, but also that it was the duty of the operators to remove the mashed plugs with the wire hooks, and if they could not do so, to call upon the foreman who was there for the purpose to remove them; that whenever the foreman caught them putting their fingers under the dies, he warned them not to do so; also that it was the duty of the foreman to enforce this rule and that he had no authority to abolish it had he wished to do so. As showing appellee's disregard for her instructions in that regard the foreman, Malone, stated that

on the day before appellee was injured, he saw her with her fingers under the press and told her not to do it; that he stopped and looked around and "she had her tongue sticking out" at him.

It is plain that appellee was guilty of negligence on her part which either caused or contributed to bring about her injuries; nor can the disregard of herself and the other employes of the rule sought to be enforced against them for their protection, excuse her negligence. While it is true as a general rule that if a regulation is habitually violated with the knowledge and acquiescence of the employer, it is to be treated as inoperative against the employe. Kenny v. Marquette Cement Mfg. Co., 243 Ill. 396; Hampton v. Chicago & A. R. Co., 236 Ill. 249. Yet we do not understand this rule to apply where disobedience to the rule is not necessary to carry on the business in which the employe is engaged and there is an honest endeavor on the part of the employer to keep the rule in force by constant warning to the employe to desist from a dangerous practice, as the proofs show to have been the case here. Thomas v. Houston, Stanwood & Gamble Co., (146 Ky. 156), 37 L. R. A. (N. S.) 950.

For the reasons above given the judgment in this case will be reversed and the cause remanded.

*Reversed and remanded.*