IVEY v. COTTON MILLS.

(Filed November 27, 1906).

*Contracts—Collateral Agreement—Ambiguous Terms—Parol*
   *Evidence—Master and Servant—Discharge of Servant—*
   *Burden of Proof—Depositions—Notice—Time and Place*
   *—Objections—Waiver—Practice—Evidence—Letters—*
   *Notice to Produce—Copies.*

1. Where, in an action to recover upon a contract for services, plaintiff
   introduced a letter from defendant which fixes the compensation, but
   does not set forth the terms of the employment nor the nature of
   the services expected of plaintiff, and it shows that the entire con-
   tract was not reduced to writing, it was competent to resort to parol
   evidence to explain the ambiguous terms and to fill out the terms
   of the contract and to show that the plaintiff represented himself
   competent to superintend the work he was about to undertake.

2. Where one contracts to serve another there is an implied representa-
   tion that he is competent to discharge the duties of his position and
   is possessed of all the requisite skill which will enable him to do
   so, and the breach of any material stipulation, whether express or
   implied, which disables the servant to discharge his part of the con-
   tract or which results in his inability to do so, furnishes good
   ground for the master to terminate the contract and is a valid and
   legal excuse for the discharge of the servant.

3. Where notice is served that depositions will be taken at the same
   time in two different places, so that the party who is notified can-
   not be present at both, he may attend at either place designated and
   disregard the notice as to the other, and the deposition taken in his
   absence at the other place will, on motion, be quashed or suppressed,
   but where he elects to appear by counsel and cross-examines the
   witness without making any objection at the time, this is a waiver
   as to any defect in the notice.

4. Exceptions to a deposition, especially those which relate to its regu-
   larity, should be disposed of, at the latest, before the trial is entered
   upon.

5. The Court properly excluded a paper-writing which plaintiff "alleged
   was a substantial copy of the greater part of his letter to the defend-
   ant," when the defendant was not notified to produce the original.

6. In an action to recover upon a contract for services, the Court correctly charged that the burden was upon the defendant to show good legal excuse for discharging the plaintiff, and that if the plaintiff failed to perform his duty as superintendent, the defendant had the right to discharge him, and that if the plaintiff had performed his part of the contract, and did not voluntarily withdraw from the service, they should find that he was wrongfully discharged.

ACTION by G. F. Ivey against Bessemer City Cotton Mills, heard by *Judge Charles M. Cooke* and a jury, at the February Term, 1906, of the Superior Court of CATAWBA.

This action was brought to recover upon a contract for services. The plaintiff was employed by defendant as superintendent of its mill on 22 March, 1902, at $1,600 per annum and entered upon the discharge of his duties 1 May, 1902. The plaintiff introduced a letter, dated 22 March, 1902, from defendant to him, which is as follows: "Yours of the 21 inst. received and noted, and you can come on as soon as you choose at the rate of sixteen hundred dollars ($1,600) per annum from now until 1 January, 1903, and at the rate of $1,800 per annum as long as it is mutually agreeable after that time, and this shall be a contract to this effect, and I hope you will be here many years. I simply want the best results, and as long as you can give these, I see no reason to change. Ours is a close corporation, and you have few to please. We will begin work on striped madras, out of 26 warps and 26 fillings, 64 and 54, and weave 32-inch goods. I mean to finish 32-inch goods, and I presume will be 33¾ to 34-inches rough; and you will please write Charlotte Supply Company about reeds, harness, etc., at once. They will want to begin work on the harness. I enclose you letter to C. Supply Company. I will build you a six-room house at once near the mill in a nice place. I leave Monday night and will be gone a week or ten days."

The defendant, over the plaintiff's objection, introduced evidence tending to show that the plaintiff had represented

himself to be competent for the work he was about to undertake, and also evidence tending to show that the plaintiff acted as superintendent of the mill and took control and direction of the construction work from 1 May, 1902, until 25 October, 1902, at which time the defendant had discovered that he was incompetent and not qualified for the work for which he was employed, he having made many serious mistakes in the manner of performing the work. The defendant thereupon threatened to discharge him, but he asked to be continued in the service, as it would injure his reputation as a mill superintendent to be discharged at that time, and he could not get a place anywhere else. He then promised that if he was kept in the employment of the defendant for another month that at the end of that time he would resign, and he signed a paper dated 25 October, 1902, agreeing that the contract would expire on 1 December, 1902. The defendant then agreed to retain him upon condition that no mistakes were made thereafter. After a few days the defendant discovered that the plaintiff had made other mistakes, and that it would have to replace machinery put up under his supervision and direction. The plaintiff was notified of this, and admitted that he had made the mistakes, and asked to be allowed to resign at once. This was on 30 October, 1902. He did resign, and was paid his salary in full to that date.

There was evidence on the part of the plaintiff in contradiction of that of the defendant as to plaintiff's representation that he was a competent mill man and as to what took place 30 October, 1902. The defendant denied that he had resigned after that date. He now sues for his salary alleged to be due for the months of November and December, 1902.

The defendant introduced the deposition of James L. Wilson to prove that the plaintiff had represented himself to be competent for the position of superintendent of the mill. The plaintiff objected to the deposition because the defendant had

served notice to take this deposition in Philadelphia, Pa., on a certain day and also a notice to take the deposition of another witness on the same day at Fayetteville, N. C., though the latter deposition was not taken.

The Court found as facts that the deposition of Wilson was opened by the Clerk and passed upon by him after due notice, and allowed to be read "subject to exceptions," and as no exception was then made to the service of the notices to take two depositions in widely separated places, the Court ruled that the exceptions reserved applied only to the competency or admissibility of the evidence and not to the validity of the deposition. The Court further found that no such objection as is now urged was made at the opening of the trial or before the trial commenced, nor until after the plaintiff had rested his case and the defendant had introduced the greater part of its evidence, the plaintiff's counsel then agreeing to waive all objections to the competency of evidence. Thereupon the Court overruled the objection and admitted the deposition. The witness testified that Ivey gave him to understand that he was a capable superintendent and understood the business he was agreeing to undertake.

The Court submitted two issues, one as to whether the plaintiff had been wrongfully discharged and the other as to the damages, and charged the jury that as the defendant discharged the plaintiff, the burden was upon it to justify the discharge, but that the parties to the contract could at any time, by mutual consent, put an end to it; and if the jury found as a fact by the greater weight of the evidence, the burden being upon the defendant, that the plaintiff failed to perform his duty as superintendent, the defendant had the right to discharge him, and they would answer the issue "No"; or if they found that there was a disagreement between the parties in respect to the manner of performing the work, and the plaintiff, thereupon, voluntarily resigned his position and

accepted the balance due him to the time of his resignation in full settlement of the contract, they should answer the issue "No"; but if they found that the plaintiff did not fail to perform his part of the contract and did not resign, they should answer the issue "Yes."

The plaintiff excepted to the refusal of the Court to charge the jury, at his request, that if the defendant knew that the plaintiff was incompetent at the time he was employed, his incompetency would not excuse the defendant from discharging him; and he also excepted because the Court, in response to the defendant's requests one and four, charged the jury that if the plaintiff hired himself out to the defendant as being competent and having experience in the kind of business he was employed to superintend, and it turned out that he was not competent and did not have such experience and he failed to properly perform the duties of his position or he neglected to perform his duties, the defendant had the right to discharge him, and they should answer the first issue "No."

There was a verdict for the defendant and judgment was entered thereon, from which the plaintiff appealed.

*George W. Wilson* and *Cline & Mebane* for the plaintiff.
*Self & Whitener* for the defendant.

WALKER, J., after stating the case: This case, we think, has been correctly tried, and the plaintiff has no just ground of complaint. The objection to the testimony of J. A. Smith, president of the defendant company, as to his conversation with the plaintiff at the Buford Hotel in the presence and hearing of James L. Wilson, is not tenable. It will be observed that the writer of the letter of 22 March, 1902, which is stated therein to be the contract, does not profess to set forth the terms of the employment, nor does he even mention the particular position which the plaintiff had been employed to fill. He does refer to a certain class of goods on which

143—13

the defendant intended to work at the outset, but this is really all in the letter that gives any intimation of the nature of the service expected of the plaintiff. This phraseology of the letter shows that there had been some previous negotiation between the parties looking to the entrance of the plaintiff into the service of the company, but, beyond fixing the compensation, we are left in the dark as to what that service was. It shows clearly that the entire contract was not reduced to writing, and by an elementary rule of law we are permitted to resort to oral evidence to supply the omission. *Cumming v. Barber,* 99 N. C., 332; *Nissen v. Mining Co.,* 104 N. C., 309, and *Evans v. Freeman* (at this term), 142 N. C., 61, where the cases are collected. But if this were not so, the contract would be ambiguously worded, and therefore susceptible in law of explanation, in order to ascertain the true intent and meaning of the parties. The principle is clearly and fully stated by *Mr. Justice Burwell* in *Colgate v. Latta,* 115 N. C., 127, and requires no further elucidation. Such evidence does not vary or contradict the writing, but in the one case it merely shows the completed contract and in the other it reveals the meaning of the parties and makes plain that which would otherwise be insensible. It is just as competent in the latter case as in the former. 17 Cyc., 672 to 679; *Egerton v. Carr,* 94 N. C., 653; *Perry v. Hill,* 68 N. C., 420; *Robbins v. Love,* 10 N. C., 82; *Lane v. Wingate,* 25 N. C., 326.

The letter of 22 March, 1902, contains a promise to pay a definite sum, and it may be inferred that it was for some kind of service, but for what kind is left doubtful, and parol evidence was necessary to explain these ambiguous terms and to fill out the terms of the contract. *White v. McMillan,* 114 N. C., 349. It has always been considered competent to prove by oral evidence the consideration of such a promise, if it is not clearly expressed in the written instrument. *Perry v.*

*Hill, supra; White v. McMillan, supra.* But this testimony, if strictly within the rule excluding oral evidence, did not prejudice the plaintiff, as it tended to prove only that Ivey had substantially represented himself as fit and competent for the position of superintendent of the defendant's mill, and this is no more than the law implies.

There is said to be always on the part of the servant an implied obligation to enter the master's service and serve him diligently and faithfully, and to conduct himself properly, and generally to perform all the duties incident to his employment honestly and with ordinary care, having due regard to the master's interest and business. So, too, the law implies a representation by the servant that he is competent to discharge the duties of his position and is possessed of the requisite skill which will enable him to do so. These and perhaps other obligations arise out of and are implied from the relation created by the contract, and the breach of any material stipulation, whether express or implied, which disables the servant to perform his part of the contract or which results in his inability to do so, furnishes a good ground for 'the master to terminate the contract and is a valid and legal excuse for the discharge of the servant. Wood's Master and Servant (1877), p. 166; *Waugh v. Shunk,* 20 Pa. St., 130. In the case last cited it is said: "Where skill, as well as care, is required in performing the undertaking, if the party purport to have skill in the business, and he undertakes for hire, he is bound to the exercise of due and ordinary skill in the employment of his art or business about it, or, in other words, to perform it in a workmanlike manner. In cases of this sort, he must be understood to have engaged to use a degree of diligence and attention and skill adequate to the performance of his undertaking. It is his own fault if he undertake without sufficient skill or applies less than the occasion requires." *Lyon v. Pollard,* 20 Wall., 403; *Harmer v. Cornelius,* 5 C. B.

(N. S.), 236; *Callo v. Brouncker,* 4 C. & P., 518; *Stanton v. Bell,* 9 N. C., 145; 2 Kent's Com., 458; *Fletcher v. Knell,* 42 (Q. B.), 58. This principle was virtually accepted and applied in the recent case of *Eubanks v. Alspaugh,* 139 N. C., 520, a case much like this in its prominent features, and sufficiently so to be decisive of this case upon the main questions involved.

The principles we have stated also apply to the objection of the plaintiff to the deposition of James L. Wilson. He really proved no more than the law implies, and the ruling in regard to that piece of evidence, if erroneous, was harmless. But the exception as to the deposition cannot be sustained for another reason. It appears from the record that the plaintiff did object to it before the Clerk, upon the ground that notices were served on him to take the two depositions at the same time in different places. But it also appears that the deposition was not taken in Fayetteville, and that the plaintiff appeared by attorney before the commissioner at Philadelphia and cross-examined the witness Wilson without making any objection at that time. When notice is served that depositions will be taken at the same time in two different places, so that the party who is so notified cannot be present at both, he may attend at either place designated and disregard the notice as to the other; and the deposition taken in his absence at the other place will, on motion, be quashed or suppressed. This is the general rule where statutes such as ours are in force, and it seems to be a reasonable one. 13 Cyc., 909 (b); *Evans v. Rothchild,* 54 Kan., 747; *Cole v. Hall,* 131 Mass., 885; *Hankinson v. Lombard,* 25 Ill., 572; *Uhle v. Burnham,* 44 Fed. Rep., 729. The plaintiff in this case made his election to appear before the commissioner in Philadelphia, and the deposition was taken, and counsel for the plaintiff cross-examined the witness, without making any such objection as is now made. We think this was a waiver of any defect in the

notice, and the plaintiff cannot now avail himself of it, if the objection does not come too late. How the matter would have stood if he had not elected to attend at either place, we need not decide.

The deposition, it is stated in the record, was opened by the Clerk in the presence of the attorneys of the respective parties and found to have been taken in accordance with the notice and commission, and the same was ordered to be read at the trial, subject to the plaintiff's exceptions. It is not a strained inference from these proceedings that the plaintiff abandoned his exception to the irregularity in the notice, as his Honor held. We take notice of these matters in order to call attention to a custom which we do not approve, and which is contrary to the spirit of the statute, and that is, reserving the right to have exceptions, especially those which relate to the regularity of a deposition, passed upon when the deposition is offered in evidence. A practise which essentially nullifies the purpose of the statute is not to be commended. Such exceptions should be disposed of, at the latest, before the trial is entered upon. Parties may be taken at a great disadvantage if this is not done. They may, perhaps, consent to wait until the deposition is introduced, but it should be so expressly stated, and we will not be disposed to extend the reservation by implication beyond the commencement of the trial. His Honor seems to have taken this view, as he held that the plaintiff had waived this objection, not having urged it until the defendant proposed to read the deposition. Revisal, 1647; *Carroll v. Hodges,* 98 N. C., 418; *Davenport v. McKee,* 98 N. C., 500.

The plaintiff offered in evidence a paper-writing "which he alleged was a substantial copy of the greater part of his letter to the defendant, dated 21 March, 1902, to which the defendant's letter of 22 March, 1902, was an answer." It was not claimed by the plaintiff that the alleged "substantial copy"

was made at the time the original was written, nor was there any evidence that said copy was made before the commencement of this action. This paper was excluded on objection. We think the ruling was proper. The defendant was not notified to produce the original of the letter, even if the copy was sufficient and would have been competent if such notice had been given. *Murchison v. McLeod,* 47 N. C., 239; *State v. Kimbrough,* 13 N. C., 431. It is evident that the copy was made from memory, and we hardly think it is such a document as is contemplated by the rule admitting secondary evidence, if it can be called a copy at all. It was at least not an admitted copy, if that would be sufficient to dispense with the necessity of notice. *Beard v. Railroad,* at this term.

The charge of the Court was as favorable to the plaintiff as the law permitted. The burden was placed in the first instance upon the defendant to show good legal excuse for discharging the plaintiff. *Eubanks v. Alspaugh, supra; Smith v. Lumber Co.,* at this term, 142 N. C., 26. It was undoubtedly correct to tell the jury that if the plaintiff failed to perform his duty as superintendent, the defendant had the right to discharge him. *Johnson v. Machine Works,* 130 N. C., 441. The defendant was not bound to retain in its service an incompetent superintendent, who did not and could not do the work assigned to him. If the parties agreed that the plaintiff might quit the service, and he voluntarily resigned, the contract was thereby terminated, and, having been paid to the time of his resignation, the defendant was not under any further liability to him. The Court also instructed the jury that if the plaintiff had performed his part of the contract, and did not voluntarily withdraw from the service, they should find that he was wrongfully discharged. This was a fair submission of the case to the jury. They found against the plaintiff on the issue of fact thus joined, and he has, in law, no good reason to complain.

Ivey *v.* Cotton Mills.

The exceptions to the instructions given in response to the defendant's prayers one and four are covered by what we have already said in discussing the admissibility of the testimony of the witnesses J. A. Smith and James L. Wilson as to the conversation between them and the plaintiff. If that evidence was competent, those two instructions were not improper.

The jury have accepted the defendant's account of the transaction, and it would therefore seem that by agreeing, on 25 October, 1902, to resign, and afterwards asking for another trial, the plaintiff thereby virtually admitted his incompetency and the mistakes he had made to the great loss of the defendant, if he did not do so in his testimony. It seems that the defendant was very indulgent to him and gave him every chance to do better and retain his position. He was discharged not so much for his general inefficiency, or for failing to do what the defendant had the right to require of him, as for doing that which was positively injurious to his employer's business. The remaining exceptions have been examined and are, we think, without merit. They do not call for any separate discussion.

No Error.