## Robertson, et al. v. Wolfe.

(Decided January 26, 1926.)

### Appeal from Daviess Circuit Court.

1.  Master and Servant—Bookkeeper did Not Perform Work in Reasonable Way, where Substantial Proportion of Bills was Incorrect.—Discharged bookkeeper, making simple accounts, did not perform work in a reasonable way, where substantial proportion of his bills was incorrect.

2.  Master and Servant—Incompetent Employe May be Discharged.— In every contract of service there is an implied condition that employe is competent to discharge duties for which he is employed, and an employer may refuse to continue to employ person who has shown himself incompetent or inefficient.

3.  Master and Servant—Discharge of Bookkeeper for Incompetency Held Justified.—Discharge of a bookkeeper before time fixed by contract of employment will not render his employer liable in damages, where his incompetency is such as to subject employer to danger of repeated losses and seriously affect his business standing.

J. R. HAYS for appellants.

T. F. BIRKHEAD for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

In the year 1923 I. H. Robertson and H. N. Robertson were conducting a loose leaf tobacco warehouse in Owensboro. In the month of November they employed R. D. Wolfe as bookkeeper. After being paid $50.00 for November and $175.00 for December, Wolfe was notified that his services were no longer needed. Claiming that he was employed at a salary of $175.00 a month until May 1, 1924, and that his discharge was wrongful, Wolfe brought this action to recover damages in the sum of $700.00 less a credit of $150.00, which and no more he was able to make after diligent effort in procuring other employment. The defense was that Wolfe was employed only for a part of the month of November and for the month of December, with the understanding that his employment was to cease if his services were not satisfactory, or the defendants sold out. The case was submitted to the court without the intervention of a jury. The court found as a matter of fact that plaintiff was employed until May 1, 1924, at a salary of $175.00 per month; that he performed his services in a "reasonable way," that after his discharge he made diligent effort to secure other employment, but was able to earn only $150.00; and then found as a matter of law that he was entitled to recover the sum of $550.00, with interest from May 1, 1924. Defendants appeal.

Plaintiff admits that he made some mistakes in his accounts. I. H. Robertson testified that they had trouble with nearly every bill that plaintiff made out. After they quit business he collected about $3,000.00 due to mistakes made by plaintiff, and there still remain five or six hundred dollars which has not been collected. James Holmes, who worked for the American Tobacco Company, testified that in the first two or three sales they had more or less trouble with the bills. John Woolfolk, cashier of the American Tobacco Company, stated that in the first and second sales there was a mistake of six or seven hundred dollars in the bills, but that he never found any house that did not make some mistakes. C. A. Todd, cashier and manager of the Southwestern Tobacco Company, stated that a good many of the bills from the Robertson house were incorrect. Louise Zarn, who worked for the Ross Tobacco Company, stated that about one-half of the bills from the Robertson house were incorrect. While mistakes occurred in the bills from other houses, the Rob-

ertson house had the most. Morton Shanks, bookkeeper for the Hodge Tobacco Company, stated that some of the bills from the Robertson house were correct and some were not. About one-third of them were incorrect. On cross-examination he said that other people sent bills that were incorrect. There might have been a few more from the Robertson house. Richard Brown, bookkeeper for the Gallaher Limited Tobacco Company, stated that about one-third of the bills from the Robertson house were incorrect, but as the sales continued the number of errors decreased. H. N. Robertson testified that there were all sorts of errors made by plaintiff. For instance, there were 540 pounds of tobacco sent to the Hodge Tobacco Company, and he only charged Hodge with 40 pounds. That ran on until the first of the year, and witness finally got it settled with Mr. Hodge. Every day there were errors and this continued from November 26th to December 18th, every day except holidays. —

The sales were conducted in the following way: The tobacco was brought to the loose leaf floor by the farmer. It was then unloaded from the wagons and put on baskets. Attached to each basket was a card giving the weight and name of the owner. When a basket was sold the purchaser's name and price were placed on the card. The cards were then sent to the bookkeeper. From them settlement was made with the farmer and the account with each buyer was made out and sent to him. It will thus be seen that the work of the bookkeeper was not that of an expert accountant, but required only the ability to keep and make out accounts of the simplest kind. However, it is equally apparent that accuracy was essential in order to avoid confusion, probable loss and consequent embarrassment. While some allowance may be made for inexperience, and an occasional error overlooked, it seems to us that where there is evidence that a substantial proportion of the bills sent to each buyer was incorrect, it can not be said that plaintiff performed his work in a "reasonable way," and the finding of the circuit court to that effect is flagrantly against the evidence.

There is an implied condition in every contract of service that the employee is competent to discharge the duties for which he is employed, and an employer may refuse to continue in his employ any person who has shown himself to be incompetent or inefficient. Union Pacific R. Co. v. Estes, 37 Kan. 715, 18 R. C. L. 518.

Under this rule the discharge of a bookkeeper before the time fixed by the contract of employment will not render his employer liable in damages where his incompetency is such as to subject his employer to the danger of repeated losses and seriously affect his standing in the business world. Griffin v. Haynes, 24 La. Ann. 480. Having this view of the law and facts, it follows that the trial court should have rendered judgment in favor of the defendants.

Judgment reversed and cause remanded for a new trial in conformity with this opinion.