PAUL D. HAYNES, BY HIS NEXT FRIEND, PAULINE HAYNES v. WINSTON-SALEM SOUTHBOUND RAILWAY COMPANY.

(Filed 27 April, 1960.)

**1. Master and Servant § 14—**

Where an employee does not seek reinstatement and damages upon contention that his discharge was invalid, but accepts his discharge and seeks to recover damages on the ground that his discharge was wrongful, the state court has jurisdiction, and his complaint in such action is not demurrable for its failure to allege the exhaustion of administrative procedure.

**2. Master and Servant § 15—**

A member of a union, as a third party beneficiary, may maintain an action against the employer for his discharge in breach of the contract between his union and the employer, but his rights under the agreement can be no greater than they would have been had he entered into the contract directly with the employer.

**3. Same—**

Where the labor contract between the employer and the union authorizes the employer to discharge an employee for insubordination, the right of the employer to discharge an employee for such reason obtains regardless of whether the employee at the time of his act of insubordination was sane or insane.

**4. Same—**

Where the employee does not elect to pursue his remedies under the Railroad Labor Act but institutes an action for wrongful discharge against the employer, the employer may assert any cause or reason it may have in justification of the discharge of the employee, and it is not required that the employer show compliance with the provisions of the labor contract in regard to notice and hearing of a charge against the employee prior to dismissal.

**5. Master and Servant § 10—**

Ordinarily an employer is entitled to discharge an employee when the employee becomes mentally incapacitated to perform the duties of his employment.

**6. Master and Servant § 15—**

The complaint in this action for wrongful discharge of plaintiff railroad employee is held to affirmatively disclose that plaintiff committed an act of insubordination constituting a ground for discharge under the subsisting labor contract, and to disclose that the employee was discharged only after he became mentally incompetent, warranting the railroad employer to discharge him in the interest of safety regardless of the terms of the contract of employment with respect to hearing, and demurrer to the complaint should have been sustained.

Petition by defendant for writ of *certiorari* allowed, based on an

order overruling defendant's demurrer to the complaint by *Olive, J.,* at Chambers, in Lexington, North Carolina, 28 November 1959. From DAVIDSON.

This is a civil action to recover damages for alleged wrongful discharge. The action was instituted on 3 April 1959 by Paul D. Haynes, by his next friend, Pauline Haynes, Paul D. Haynes having been adjudged *non compos mentis* and committed to the State Hospital at Butner on 14 April 1958 as a mental patient, where he remained until 18 August 1958 when he was released on probation.

In substance the plaintiff's complaint alleges:

1. That for a period of approximately thirty years prior to 9 April 1958 the plaintiff was employed by the defendant, and for sometime prior to the foregoing date he was employed as a section foreman.

2. That by reason of an agreement between the employees' recognized bargaining agent, the Brotherhood of Maintenance of Way Employees, and the defendant, the plaintiff's employment was permanent. That on 9 April 1958 an incident occurred at the Duke Power Company's Beckerdite Spur Track, for which incident plaintiff was suspended by defendant through its agent.

3. That on 14 April 1958, following observation and treatment by physicians, the plaintiff was committed to the State Hospital at Butner by the Clerk of the Superior Court of Davidson County for observation and treatment for his mental disorder; that he remained in said hospital until 18 August 1958, at which time he was released from said commitment but he remained on probation and is at this time on probation from the State Hospital at Butner and has not been restored to competency.

4. That on 21 May 1959 the defendant demurred to the plaintiff's complaint in that the plaintiff failed to set forth a good cause of action for which he is entitled to relief for the following reasons: "(1) The plaintiff has failed to allege facts in his complaint indicating that he has exhausted his administrative remedies, under his contract of employment, he being an employee of a carrier subject to the Railway Labor Act. (2) The plaintiff has failed to allege facts in his complaint to show that he was wrongfully discharged or to show that he is entitled to compensation from the defendant as an employee."

5. That on 16 July 1959 the plaintiff was permitted to amend his complaint and, among other things, alleged that he was duly and legally restored to sanity on 13 August 1959.

6. It is alleged in the complaint as amended, "That after the discharge from the State Hospital at Butner of the plaintiff on August 18, 1958, the plaintiff was able to perform any and all of the duties

and functions which he had been doing prior to his temporary incompetence. That shortly after his discharge, a hearing was held pursuant to an incident which occurred on April 9, 1958 at Beckerdite Spur Track near Mile Post No. 7. This incident occurred five days previous to the entrance of the plaintiff in the State Hospital at Butner. That at the hearing which was held shortly after the plaintiff's discharge from the hospital, the ground on which the hearing was being held was for 'insubordination to an immediate superior.' That at the time of the occurrence of insubordination which was on April 9, 1958, the plaintiff was temporarily insane and was in no way responsible for any of his acts. That at the hearing the defendant knew or should have known the condition of the plaintiff at the time the incident of 'insubordination' took place. That nevertheless, the plaintiff was discharged and relieved of his position on the grounds of 'insubordination' and that even though at the time of the hearing the defendant knew or should have known the condition of the plaintiff at the time * * * the incident of 'insubordination' took place, the decree of final discharge was rendered on September 25th 1958. That this discharge was wrongful and in violation of the rights of the plaintiff under said contract."

7. After the complaint was amended showing that the plaintiff had been restored to sanity, and by striking out certain paragraphs of the complaint and substituting others in lieu thereof, the plaintiff renewed its demurrer to the complaint and the amendment thereto as follows:

"1. The defendant, through its counsel, demurs to the amendment to complaint and to the complaint, as amended, for the reasons set forth in the original demurrer filed in this cause and hereby amends the second ground of demurrer, by setting forth more specifically that:

"(2) The plaintiff has failed to set forth a good cause of action, in that:

"(a) He has failed to allege any contractual provisions as a basis for the alleged wrongful discharge or loss of damages;

"(b) He has failed to allege any facts relating to the incident at Beckerdite spur track or to allege that the plaintiff's actions during that incident did not support the stated grounds of discharge, so as to make the discharge wrongful.

"(c) He has clearly shown by his own allegations that he was both incompetent and guilty of insubordination at the time of the incident which served as the basis for the discharge, thereby showing that the defendant had proper grounds for discharging the plaintiff.

"2. The defendant, through its counsel, further demurs to the com-

plaint and amendment to complaint for the reason that the plaintiff has failed to institute a good cause of action within the time required by Rule 11, Section 4, of the agreement between the defendant and the Maintenance of Way Employees, which contract is binding on the plaintiff and is a part of the court records in this cause.

"3. * * * (not pertinent to this appeal)."

The following stipulations were entered into at the hearing below:

"It is stipulated and agreed that an agreement between the Atlantic Coast Line Railroad Company and its Maintenance of Way Employees, represented by Brotherhood of Maintenance of Way Employees, effective October 1, 1956, is applicable to this case, is binding upon both plaintiff and defendant and is hereby incorporated by reference into the complaint.

"It is further stipulated and agreed that the Rules of the Operating Department of the Winston-Salem Southbound Railway Company, dated November 1, 1950, were binding on the plaintiff during his employment with defendant and are hereby incorporated by reference into the complaint."

The court overruled the demurrer to the complaint as amended.

The defendant applied to this Court for writ of *certiorari*, pursuant to Rule 4 (a), Rules of Practice in the Supreme Court, 242 N.C. 766. Petition allowed.

*Elledge & Mast, Walser & Brinkley, Clyde C. Randolph, Jr., for plaintiff.*

*Craige, Brawley, Lucas & Hendrix; Phillips, Bower & Klass for defendant.*

DENNY, J. The Rules of the Operating Department of the defendant railroad provide for discharge on the following grounds: "Disloyalty, dishonesty, desertion, intemperance, immorality, vicious or uncivil conduct, insubordination, incompetency, wilful neglect, inexcusable violation of rules resulting in endangering, damaging or destroying life or property, making false statements, or concealing facts concerning matters under investigation will subject the offender to summary dismissal."

Likewise, the Agreement between the defendant and the Brotherhood of Maintenance of Way Employees contains these pertinent provisions with respect to dismissal: "Rule 10 — Discipline and Grievances. Section 1. An employee who has been in the service thirty (30) calendar days or more will not be disciplined or dismissed

without a proper hearing as provided for in Section 2 of this rule. He may, however, be held out of service pending such hearing.

"Section 2. An employee against whom charges are preferred, or who may consider himself unjustly treated, shall be granted a fair and impartial hearing by a designated official of the Company. Such hearing shall take place within ten (10) days after notice by either party. Such notice shall be in writing and shall clearly specify the charge or nature of the complaint. He shall be given reasonable opportunity to secure the presence of necessary witnesses and shall have the right to be represented by the duly accredited representatives of the employees. All witnesses except the one testifying will be excluded from the hearing both before and after testifying. No testimony or statements will be admitted at the hearing except such as may bear directly upon the precise charge against the employee, except that the official service record of the employee involved will always be admissable. No evidence or statements will be admitted to the record of the hearing, or used in assessing discipline, except such as have been introduced at the hearing, and which have been subject to cross examination. A decision in writing will be rendered within ten (10) calendar days from the close of the hearing. A copy of the transcript of evidence taken at the hearing will, upon request, be furnished the employee affected and his representative."

Under these applicable rules and agreement the defendant has reserved the authority to discharge an employee for cause, and causes which will justify summary dismissal are set out therein. Therefore, in an action by an employee against a railroad, based on allegations that his discharge was wrongful and in violation of the terms of the collective bargaining agreement between the employees' union and the railroad, is failure to allege that the employee has exhausted his administrative remedies under the union contract and under the Railway Labor Act, 45 U.S.C.A., section 151, *et seq.*, fatal to plaintiff's cause of action when challenged by demurrer?

The authorities seem to support the view that where a railroad employee refuses to accept the discharge as valid and seeks reinstatement or damages for suspension, in such a situation his contention will be construed as a grievance arising out of the contract and statute, and such grievance must be presented to the agency provided by the Railway Labor Act. *Piscitelli v. Pennsylvania-Reading Seashore Lines,* 8 N.J. Super. 557, 73 A 2d 751; *Moore v. Illinois C. R. Co.,* 312 U.S. 630, 85 L.Ed. 1089; *Slocum v. Delaware L. & W. R. Co.,* 339 U.S. 239, 94 L. Ed. 795; *Transcontinental & West. Air v. Koppal,* 345 U.S. 653, 97 L. Ed. 1325.

In the case of *Lee v. Virginian Railway Co.*, 197 Va. 291, 89 S.E. 2d 28, It is pointed out that, " * * * where an employee accepts his discharge as final and seeks damages for breach of contract * * * then either the federal or the state courts have jurisdiction. In the case where an employee refuses to recognize the discharge as valid and seeks reinstatement and damages, neither the state nor the federal court has jurisdiction, but his sole remedy is the right of referral of his grievance to the Railway Adjustment Board. *Spires v. Southern Ry. Co,.* 4 Cir., 204 F 2d 453; *Switchmen's Union of North America v. Ogden Union Railway & Depot Co.*, 10 Cir., 209 F. 2d 419."

In light of the foregoing decisions, we hold that the plaintiff on the facts alleged had the right to institute his action in a court of law instead of pursuing his administrative remedies. Therefore, his failure to allege that he had exhausted his administrative remedies is not fatal to the plaintiff's cause of action in the face of the defendant's demurrer in that respect. However, the serious question for determination is whether or not the complaint, as amended, states a cause of action.

The original complaint alleged that at the time of the incident which resulted in the suspension of the plaintiff on 9 April 1958, the plaintiff was *non compos mentis*. It was likewise alleged that at the time of the hearing, shortly after the plaintiff was discharged from the State Hospital at Butner, he was still *non compos mentis* and "incapable from want of understanding of participating in a hearing or being a party to any proceedings conducted by the defendant for the purpose of determining whether just cause existed for his suspension and dismissal from the service of the defendant."

The amendment to the complaint, however, alleged that after the discharge of the plaintiff from the State Hospital at Butner on 18 August 1958, the plaintiff "was able to perform any and all of the duties and functions which he had been doing prior to his temporary incompetence." We do not interpret the plaintiff's allegations with respect to the hearing pursuant to the rules governing such hearings to allege any irregularity with respect to the hearing or the denial of any of the plaintiff's rights in connection therewith pertaining to procedure. Nor do the allegations of the complaint attempt to negative or deny the act of insubordination for which the plaintiff was discharged; instead, the plaintiff relies squarely on his allegations to the effect that the discharge was wrongful because, not at the time of the hearing but at the time the plaintiff committed the act of insubordination (the character of which is not revealed by the record), the plaintiff was *non compos mentis*.

The plaintiff, being a third party beneficiary under the agreement between the defendant and the Brotherhood of Maintenance of Way Employees, is entitled to the rights and benefits thereunder. *Lammonds v. Mfg. Co.*, 243 N.C. 749, 92 S.E. 2d 143. Even so, his rights thereunder are certainly no greater than they would have been had he entered into the contract directly with the defendant. Therefore, in our opinion, when he committed an act of insubordination he became subject to dismissal whether he was sane or insane at the time.

While the agreement between the defendant and the Brotherhood of Maintenance of Way Employees provides that an employee, who has been in the service of a railroad which is subject to the Railway Labor Act, for thirty calendar days or more, will not be disciplined or dismissed without a proper hearing, and that the notice of hearing shall be in writing and shall clearly specify the charge or nature of the complaint, we think this requirement is essential only where the parties are seeking to assert their remedies and establish their rights under the Railway Labor Act. But where a plaintiff employee elects to seek relief in a court of law instead of seeking relief through his administrative remedies under the Railway Labor Act, the defendant railroad may assert any cause or reason it may have in justification of its discharge of the employee. On the one hand, we think the complaint affirmatively establishes the fact that the plaintiff committed an act of insubordination on 9 April 1958 — that seems to be conceded; while on the other hand, we think that when the plaintiff became mentally incompetent and was so adjudged and remained so for several months, the defendant had the right to terminate the plaintiff's employment without regard to the terms of the agreement with respect to a hearing.

In 35 Am. Jur., Master and Servant, section 29, page 465, it is said: "Generally, a contract for the performance of personal services must be held to have been terminated where it appears that either the employer or the employee has died or become incapacitated by insanity. * * *"

It is likewise stated in 56 C.J.S., Master and Servant, section 38, page 423: "A contract of employment for personal services is terminated by the death of the servant, or where by reason of insanity, sickness, or other disability, or conviction of a felony, he is unable to perform his contract, unless the parties have contracted to the contrary. The fact that the servant is incapacitated by causes beyond his control, or, as it is termed, by the act of God, does not deprive the master of his right to terminate the contract."

In *Ivey v. Cotton Mills*, 143 N.C. 189, 55 S.E. 613, this Court said:

"There is said to be always on the part of the servant an implied obligation to enter the master's service and serve him diligently and faithfully, and to conduct himself properly, and generally to perform all the duties incident to his employment honestly and with ordinary care, having due regard to the master's interest and business. So, too, the law implies a representation by the servant that he is competent to discharge the duties of his position and is possessed of the requisite skill which will enable him to do so. These and perhaps other obligations arise out of and are implied from the relation created by the contract, and the breach of any material stipulation, whether express or implied, which disables the servant to perform his part of the contract or which results in his inability to do so, furnishes a good ground for the master to terminate the contract and is a valid and legal excuse for the discharge of the servant." See Anno: — Discharge of Employee—Incompetency, 49 A.L.R. 472; 35 Am. Jur., Master and Servant, section 41, page 475, *et seq.; Robertson v. Wolfe,* 214 Ky. 244, 283 S.W. 428, 49 A.L.R. 469; *New York, C. & St. L. R. Co. v. Schaffer,* 65 Ohio St. 414, 62 N.E. 1036, 62 L.R.A. 931, 87 Am. Rep. 628; *Moore v. Chicago B. & Q. R. Co.,* 65 Iowa 505, 22 N.W. 650, 54 Am. St. Rep. 26; *Brighton v. Lake Shore & M. S. R. Co.,* 103 Mich. 420, 61 N.W. 550.

In the case of *Smith v. St. Paul & D. R. Co.,* 60 Minn. 330, 62 N.W. 392, in an action for alleged wrongful discharge of an engineer for drunkenness, the Court said: "We feel justified in stating, as a proposition of law, that any conduct on the part of an engineer, in respect to the use of intoxicating liquors, which, to retain him, would render it negligence on the part of a railway company towards its passengers, constitutes good and sufficient grounds for the engineer's discharge."

It would be difficult to imagine a situation more hazardous to its employees and to the safety of its passengers than for a railroad to retain an employee as its section foreman who had been adjudicated *non compos mentis* and whose legal status so remained at the time of the hearing some months later and who was not restored to sanity for approximately a year thereafter.

We hold, as a matter of law, that on the facts alleged, the defendant had the legal right to discharge the plaintiff. Hence, the ruling of the court below is

Reversed.