Sydney P. DAVIES, Appellant,

v.

Joseph MANSBACH et al., Appellees.

Court of Appeals of Kentucky.

May 20, 1960.

Rehearing Denied Oct. 7, 1960.

Dysard, Dysard & Johnson, G. B. Johnson, Jr., Ashland, for appellant.

J. W. McKenzie, Ashland, for appellee.

STANLEY, Commissioner.

This is an action by the appellant, Sydney P. Davies, against the appellees, Joseph Mansbach and other members of the Mansbach family, doing business as a partnership, for damages for breach of a contract of employment. The case was tried without a jury, the evidence being heard by a special Commissioner and submitted to the court on exceptions to his report. The Commissioner found from voluminous evidence that the defendants were legally justified in discharging the plaintiff, except for a provision in the contract of employment. Because of it, the defendant should be held to have condoned the grounds of discharge. He recommended judgment for the plaintiff in the sum of $10,183.66, representing salary and commissions which he would have received during the interval between his discharge and his obtaining employment, plus reimbursement of expenses necessarily incurred in obtaining that employment. Upon review of the evidence, the court agreed with the finding of fact of a justifiable cancellation but regarded the provision of the contract referred to as not being applicable. The judgment, therefore, denied damages.

The Mansbach family for many years operated a scrap metal business in Ashland. Early in 1950 they decided to enter into the business of storing and selling steel products under the name of Mansbach Steel Company. They employed Davies to set up and manage that business for a stated salary and percentage of the gross sales. Davies manifested ability and an aptitude as general manager, and the venture proved profitable. In order to retain Davies, a written contract was executed by the parties on June 3, 1952. The contract expressly recognizes the ability and experience of Davies in the warehouse business and his interest in its continued success and growth.

It provides for his employment as general manager of the steel company for ten years from May 1, 1952, at increased compensation. Davies was expressly given broad discretion and latitude to make contracts of purchase and sale of materials, to have charge of the employment of personnel and to "make and carry out the general policies of the Mansbach Steel Company in such manner as in his opinion is for the best interest and continued success" of the company. This was to be without interference of the Mansbachs except as provided in a specific paragraph which will be hereinafter noted. As a reciprocal, Davies agreed to perform the "services required of him as general manager to the best of his ability and to devote all his working time, labor and skill and give his attention and best endeavor to the business of party of the first part [the company] and to the utmost of his skill and power exert himself for the interests, benefit, profit and advantage of said business as general manager thereof."

On August 1, 1953, the Mansbachs decided to open up a similar business in the Louisville area. They leased a building across the river in Jeffersonville, Indiana, and Davies went there to establish and conduct that business, leaving another man in charge of the Ashland warehouse but under his supervision. This extension of the contract of employment was indefinite; but the change in or addition to his duties was apparently agreeable to Davies, for he was to receive a percentage of the earnings of both warehouses.

The contract contained no provision for its rescission or cancellation. But on June 2, 1954, the Mansbachs requested Davies' resignation. He refused to resign and was thereupon discharged.

As above outlined, the contract committed Davies to exerting his utmost skill and power to conduct the business for the "interest, benefit, profit and advantage of the business." Were this not expressed, it would be implied. Such provisions,

whether express or implied, are deemed to have been violated and the dismissal or termination of the employment legally justified when the employee has been guilty of acts or conduct which manifest negligence, unskillfulness, inefficiency or unfaithfulness to the employer's interests, or of anything which is contrary to a faithful and diligent performance of the services for which he was employed. If termination of a contract of employment, whether of an executive or of a less responsible position, is justifiable, there is, of course, no legal liability of the employer for breach of contract. Thomas v. Houston, Stanwood & Gamble Co., 146 Ky. 156, 142 S.W. 214, 37 L.R.A.,N.S., 50; Robertson v. Wolfe, 214 Ky. 244, 283 S.W. 428, 49 A.L.R. 469; Watkins, Inc. v. Cochran, 292 Ky. 846, 168 S.W.2d 351; 1 Labott, Master and Servant, § 188; 56 C.J.S. Master and Servant §§ 7b, 42c, 42g; 35 Am.Jur., Master and Servant, §§ 34, 40, 41. Whether justification exists for discharge under the facts and circumstances of the particular case is usually a question of fact to be determined by a jury or by the court, if tried without a jury. But the burden is, of course, upon the employer to justify the termination of the contract. Watkins, Inc. v. Cochran, supra; 56 C.J.S. Master and Servant § 129 (2).

In the present case Gerald Mansbach, one of the partners, was usually at the Jeffersonville warehouse during the working days, returning to Ashland for the week ends. He was in position, therefore, to see how the business was being conducted and managed by Davies and, of course, Davies' personal conduct. Apparently, there were differences of opinion between these two men, but the contract gave Davies sweeping and superior authority in the management, and it seems his desires and judgments prevailed. The claimed justification of the right to abrogate the contractual relationship is made up of numerous instances and items, some of which are of relatively minor consequence. No one or two of them in isolation could be said

to serve as sufficient legal reason for discharge. But when all are combined and considered together, there is much force in the aggregate to establish the breach of Davies' commitment to "exert" his "utmost skill" in the management of the business. There is also the fact that under Davies' exclusive management, the Ashland plant was profitable, while under his management the Jeffersonville plant lost between $30,000 and $40,000 in a period of nine months. In the opinion of the Commissioner, confirmed by the trial judge, Davies gave no satisfactory explanation of this result.

All of the evidence, the court found, gave the employers a legal cause for cancelling the contract. On the appeal we are not shown that this finding of fact is "clearly erroneous," a requisite of CR 52.01. We, therefore, proceed to consider the interpretation and construction of the provision in the contract which the Commissioner regarded as estopping the employers from discharging the employee but which the trial court regarded as inapplicable.

The contract contained this limitation upon the broad powers granted and assumed by Davies as general manager of the warehouses as shown above, namely:

"Any and all decisions of the party of the second part may be amended, altered, revoked or otherwise disposed of by written instructions from the party of the first part herein, signed by partners owning a majority in interest of the party of the first part."

The appellant strongly relies on this provision. He argues that if his management of the plants was not satisfactory or as desired, the company had the right to object and to direct a change. This it did not do but summarily discharged him.

It seems to us that in construing the contract as a whole, this reserved amendatory and veto provision was intended to be invoked and exercised as to particular decisions or specific acts of the general man-

ager before they were executed or accomplished. There was only one instance where the veto was exercised, and that was to direct the discharge of Davies' son-in-law, and that direction was not obeyed for some time afterward. We cannot regard the failure of the employers to invoke or exercise this reserved power as condonation or as estopping them from terminating Davies' employment for the overall reasons held to have been a justifiable and legal cause.

The judgment is affirmed.