**Roy A. WALKER, Plaintiff,**

v.

**SOUTHERN RAILWAY COMPANY,
Defendant.**

**Civ. No. 2171.**

United States District Court
W. D. North Carolina,
Asheville Division.

Jan. 18, 1965.

George H. Ward, Asheville, N. C., and Thomas J. Edwards, Rutherfordton, N. C., for defendant.

J. Nathaniel Hamrick, Rutherfordton, N. C., for plaintiff.

CRAVEN, Chief Judge:

This is an action by Roy Walker to recover damages for breach of his employment contract with the Southern Railway Company. Originally filed in the Rutherford County Superior Court on August 15, 1963, it was removed on petition of Southern, by reason of diversity of citizenship, to this court.

Until his discharge as of 12:00 midnight, May 28, 1957,[1] Walker had been in Southern's employ approximately thirteen years, the latter portion of which he worked as a fireman.

On March 3, 1957, Walker was notified by a crew clerk for Southern that he had been "rolled for a regular job". In less colloquial language this means that Walker was displaced on his job by another fireman because of the latter's higher seniority. Walker then left, saying that he was sick and was going home.

By letter dated April 29, 1957, Walker was informed by J. R. Brosman, South-ern's Division Superintendent, that unless he "protected" his seniority within 30 days from the date of the letter his seniority would be forfeited. A postal certificate shows that the letter was received and signed for by Walker's daughter-in-law on April 30, 1957. Walker was in the Gardner-Webb Medical Clinic recuperating from an operation, and did not actually see the letter until May 2, 1957.

As of midnight on May 28, 1957, Southern treated Walker's seniority as having been forfeited. The next day (May 29th) Walker appeared at the office of Southern in Charlotte seeking to protect his seniority, but was told that he had already lost it. Walker subsequently traveled to Greenville, South Carolina, to ask Mr. Brosman to reinstate him. Reinstatement was denied, whereupon this suit to recover damages for breach of contract was instituted.[2]

## JURISDICTION

■ If a discharged railroad employee elects to seek reinstatement (with or without back pay), the National Railroad Adjustment Board has primary jurisdiction to the exclusion of both state and federal courts. But if the employee accepts his discharge as final, and such is the situation here, he may bring an action at law for damages. Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950); Moore v. Illinois Central R. R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 (1941).

■ Walker did not exhaust administrative remedies available to him under the collective bargaining agreement between Southern and the Union. Southern not unreasonably contends that his failure to do so bars this action, and that exclusive jurisdiction is in the National Railway Adjustment Board. Whether he must show that he has exhausted his administrative remedies under the contract depends upon the applicable state law.

---

1. Defendant has not pleaded any statute of limitations. Fed.R.Civ.P. 8.

2. Walker originally sought reinstatement also. That part of the complaint has been dismissed.

Transcontinental & Western Air, Inc. v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325 (1953).

■ In Haynes v. Winston-Salem Southbound Ry. Co., 252 N.C. 391, 113 S.E.2d 906 (1960), the North Carolina Supreme Court held that a railroad employee who accepts his discharge as final and brings an action to recover damages for breach of contract is not required to exhaust his administrative remedies before maintaining the action. Southern, in its brief, cites Charlotte City Coach Lines, Inc. v. Brotherhood of Railroad Trainmen, 254 N.C. 60, 118 S.E.2d 37 (1961), for the proposition that North Carolina law *does* require exhaustion of administrative remedies before maintaining an action for breach of contract.

The Charlotte case was decided after Haynes, but they are clearly distinguishable. Charlotte was a suit between an employer and a labor union; the court was primarily concerned with the interpretation of a North Carolina statute providing for *arbitration* of employee grievances. In that case the employee, over whom the dispute arose, was *suspended* from his regular job as a passenger bus driver. He was not discharged.

### BREACH OF CONTRACT

Coming to the merits, Walker was discharged for one reason only: his alleged failure to "return to actual service" or report for work prior to the expiration of the 30-day limitation period.[3]

Walker informally notified Southern of his illness and inability to work by having his daughter telephone Southern's yard office in Charlotte on March 7, 1957. Again, on April 9, 1957, Walker, accompanied by his daughter and George Padgett, went to Southern's terminal station in Charlotte to pick up a salary check due him. While there, he told Edward Brinkley, Southern's "Trainmaster", that he was unable to work because of an operation and adhesions.

■ But, regardless of the effect, if any, of such informal notification, Walker contends that under no circumstances was Southern entitled to take his seniority away from him before the 29th of May, 1957, and the fact that it did so was a violation of his contract. Walker would count the 30-day period from the 29th of April to the 29th of May, i. e., exclude the first day and include the last day.

Southern contends that the proper method of counting the 30-day period is to include the first day (the day the letter was written) and exclude the last day, thereby making the termination date fall on May 28, 1957.

The contractual provision setting forth the 30-day limitation period is silent as to how the period is to be counted.[4] According to Southern, it has not been interpreted in any judicial or administrative proceeding, nor has it been necessary to do so until now.

Southern officials who testified indicated that the customary practice of the railroad was to include the first and exclude the last day, and that the Union was not opposed to such practice. But there was evidence to the contrary. Southern's contention is weakened by its admission that never before has time computation been of great importance. Common usage is not established.

Although there is no uniform rule of computing time with respect to the inclusion and exclusion of terminal days, the majority rule is that the time within which an act is to be done is to be computed by excluding the first day and

---

3. It was assumed at the trial, perhaps because of the employment contract, that the discharge was unlawful if Walker reported for work within 30 days of the notice. The trial proceeded on this premise.

4. The provision appears in a handbook titled: SCHEDULE OF WAGES and RULES AND REGULATIONS for Firemen, Hostlers and Outside Hostler Helpers. Article 25(e) (3) provides: "When hired engineers or firemen are laid off on account of reduction in service, they will retain all seniority rights; provided, they return to actual service within thirty (30) days from the date their services are required."

including the last day. 86 C.J.S. Time § 13(1), (3), (7), p. 849. North Carolina is in accord with this rule.[5] So is the federal practice. In re Schmidt, 54 F. Supp. 262 (D.C.Neb.1944); See Fed. R.Civ.P. 6.

Walker reported for work on May 29, 1957. It is adjudged that this was the last day of the 30-day period within which he was required to report. Southern's forfeiture of his seniority as of May 28, 1957, was, therefore, unlawful and constituted a violation of his contract.

Under North Carolina law the measure of damages for wrongful discharge from employment is the actual damage sustained on account of the breach.[6] "The maximum amount recoverable would be the difference, if any, between the agreed compensation and the amount [the employee] earned or by reasonable effort could earn during the contract period." Thomas v. Catawba College, 248 N.C. 609, 104 S.E.2d 175 (1958).

"Back pay" is a proper element of the measure of damages in actions for breach of contract of railroad employment. Mackey v. Union Terminal Co., 321 F.2d 901 (5th Cir. 1963); Air Line Dispatchers Association v. California Eastern Airways, 127 F.Supp. 521 (D.C. Calif.1954); Cook v. Des Moines Union Ry. Co., 16 F.Supp. 810 (S.D.Iowa 1936). But Walker has no contractual basis for claiming lost wages as damages *beyond* the date of this judgment. Shiels v. Baltimore & Ohio R. R. Co., 154 F. Supp. 917, 926 (S.D.Ind.1957).

Moreover, Walker had the duty to mitigate damages, or, put more accurately, his damages are limited to the extent he could have reasonably mitigated them and failed to do so. That is, one injured by the breach will be allowed to recover from the other party only such damages as he could not with reasonable effort have avoided. Troitino v. Goodman, 225 N.C. 406, 35 S.E.2d 277 (1945).

When Walker was discharged in 1957, he was 52 years old and had been working for the railroad about thirteen years. The most he had ever earned was $3,321.74 in 1956. In 1955 he earned $2,291.60, in 1954 $1,040.88, in 1953 $1,356.24, in 1952 $2,803.69, in 1951 $856.94, and in 1950 $551.24. The years prior to that follow a similar income pattern.

It is not easy to seek new employment at the age of 52, but it is not impossible to do it successfully. No evidence was offered in the trial of this case tending to show that Walker made the effort. Walker's appearance and personality is pleasing. He does not appear to be sick, and no evidence was offered tending to show that he has been so ill as to be unable to work since 1957. In my judgment, Walker could have successfully sought other employment and have earned a minimum of approximately $50.00 a week, or $2,400.00 per annum. It is doubtful, in view of his work record, that he would have earned substantially more than that amount had he been permitted to continue in his employment with Southern Railway. But the last year (1956) is much more significant than the prior ones. Considering the average income, but weighting the average heavily in favor of the last full year (1956), I draw the inference and find as a fact that but for his wrongful discharge Walker would have earned approximately $3,000.00 per annum as a fireman for the Southern Railway from date of discharge until now. It has now been more than

5. N.C.G.S. § 1-593 provides: "The time within which an act is to be done, as provided by law, shall be computed by excluding the first and including the last day. If the last day is Saturday, Sunday or a legal holiday, it must be excluded."

6. No evidence was offered at the trial bearing upon measure of damages. Some-

times employment contracts provide severance pay in event of discharge. Exhibit D has no such provision, nor does it even disclose the duration of the employment contract—itself a damage limitation. See: Marranzano v. Riggs Nat. Bank, 213 F.2d 196 (D.C.Cir. 1954); Enterprise Wheel & Car Corp. v. United Steelworkers of America, 269 F. 2d 327 (4th Cir. 1959).

seven and less than eight years since his discharge, and he has lost approximately $600.00 per year. I find that Walker has been damaged in the amount of $4,500.00 by reason of wrongful termination of his employment.[7]

There is no evidence whatsoever to support the prayer for punitive damages, and the court fails and refuses to find that Walker is entitled to recover punitive damages.

It is adjudged that Walker has been damaged in the total sum of $4,500.00. Judgment will be entered that he have and recover of Southern that amount.

7. It is unnecessary to decide whether lost fringe benefits, e. g., retirement and disability compensation, etc., should be considered as damage elements for the reason that no evidence was offered to show the value of same, nor even to show that such benefits were lost.